**Erika Roman-Maury, Esq.**
California State Bar No. 216323
ELR LAW GROUP
20058 Ventura Blvd, Suite 137
Woodland Hills, CA 91364
Tel (818)385-1100
Fax (818)385-1041
Email: Erika@ELRLawgroup.com

Attorney for Petitioner, *Massiel Urrutia-Castellon*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MASSIEL URRUTIA-CASTELLON<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, Acting Attorney General of the United States; MARKWAYNE MULLIN, Secretary of Department of Homeland Security; TODD LYONS, Acting Director, United States Immigration and Customs Enforcement; ERNESTO SANTACRUZ, JR., Acting Field Office Director, Los Angeles Field Office, United States Immigration and Customs Enforcement and Removal Operations; DAVID MARIN, Warden, Immediate Custodian, Adelanto ICE Processing Center; SIRCE OWENS, Acting Director, Executive Office for Immigration Review, *et al.*,<br>Respondents, | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS, PURSUANT TO 28 U.S.C. §2241; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§702-706** |

**PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Massiel Urrutia Castellon seeks habeas relief under 28 U.S.C. § 2241 and declaratory and injunctive relief under the Administrative Procedure Act ("APA"). She challenges Respondents' revocation of her February 2022 release from ICE custody under an Order of Release on Recognizance ("OREC") with Alternatives to Detention ("ATD") supervision, and her resulting detention. The record identifies no written revocation notice, no disclosed individualized basis for revocation or re-detention, and no custody hearing at which the Government bore the burden to justify her continued physical confinement.

Petitioner entered without inspection near Otay Mesa, California, on or about February 2, 2022, and was apprehended. DHS placed her in removal proceedings under INA § 240 and released her on an OREC "[i]n accordance with section 236 of the Immigration and Nationality Act," subject to reporting, residence, lawful-conduct, and ATD-monitoring conditions.

For approximately four and a half years, Petitioner lived openly at the address ICE recorded, complied with ATD and BI SmartLINK supervision, and appeared in immigration court. She filed applications for asylum, withholding of removal, and Convention Against Torture protection; married a U.S. citizen who serves as a Los Angeles County Sheriff's Deputy; obtained approval of her

husband's Form I-130 immediate-relative petition; and maintains a pending Form I-601A provisional unlawful presence waiver application.

At a January 21, 2025 individual merits hearing, Petitioner completed direct testimony in support of her application for asylum. The Immigration Judge ("IJ") continued the matter to May 19, 2025 for cross-examination. On April 25, 2025, Petitioner's retained counsel suffered a brain bleed and was hospitalized in intensive care. Before the next hearing, counsel told Petitioner that it would be cancelled or reset and instructed her not to appear to court. Petitioner followed that advice. Neither appeared on May 19, 2025 and the IJ entered an *in absentia* removal order.

Former counsel filed a motion to reopen documenting his medical emergency but did not disclose that he had instructed Petitioner not to attend the hearing. The IJ denied the motion on July 10, 2025 for that omission, finding that counsel had "thoroughly documented his good cause" but that the motion failed to explain Petitioner's nonappearance. Present counsel filed a renewed motion to reopen and rescind the *in absentia* order on August 14, 2026, based on ineffective assistance of counsel. That motion remains pending before the IJ.

ICE did not immediately re-detain Petitioner following the *in absentia* removal order. She remained at liberty under ATD supervision for approximately fifteen months. USCIS approved her husband's I-130 petition in December 2025.

She filed an I-601A Provisional Unlawful Presence Waiver and on USCIS directed her to appear at an Application Support Center on August 6, 2026 for biometrics fingerprinting in connection with the application warning her that failure to appear could result in abandonment of the application. Petitioner complied. At the fingerprint appointment, USCIS alerted Enforcement and Removal Operations ("ERO") to her presence, and ERO officers arrested her.

Respondents did not encounter Petitioner by chance, apprehend her while fleeing, or act in an emergency; they re-detained her while she was complying with a Government-required immigration-benefit appointment. She has remained in ICE custody since August 6, 2026.

Petitioner does not contend that ICE categorically lacked authority to rearrest her. INA § 236(b), 8 U.S.C. § 1226(b), permits revocation of release and rearrest under the original warrant. Nor does she seek review of the *in absentia* order or the merits of her removal proceedings. Rather, she challenges the manner in which Respondents exercised that authority: without adequate notice, a disclosed individualized basis, or a meaningful opportunity to contest the deprivation before or promptly after confinement.

Alternatively, if Respondents contend that Petitioner's detention is governed by 8 U.S.C. § 1231 because the *in absentia* order remains administratively final, the 90-day removal period has long expired. Her continued detention is then

authorized, if at all, under § 1231(a)(6), as limited by *Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001). Petitioner does not contend that the expired 90-day period alone requires release. Rather, she alleges that her pending renewed motion to reopen, any operative stay, and the substantial evidence supporting rescission render removal not presently executable and undermine any assertion that removal is significantly likely in the reasonably foreseeable future. *Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001).

Further, under *Matter of W-F-D-*, 29 I. & N. Dec. 854, 857–58 (BIA 2026), an IJ generally lacks jurisdiction to redetermine custody after a removal order becomes administratively final, and neither the IJ nor the Board may compel DHS to initiate the post-order review process under 8 C.F.R. § 241.13. Thus, no IJ or BIA remedy exists for Petitioner's § 1231/*Zadvydas* custody claim; the available avenues are a written DHS custody-review request and federal habeas. *Matter of W-F-D-*, 29 I. & N. Dec. 854, 857–58 (BIA 2026).

Accordingly, Petitioner seeks immediate release under her prior OREC and ATD conditions. Alternatively, she seeks a prompt constitutionally adequate hearing before a neutral decisionmaker at which Respondents must prove by clear and convincing evidence that materially changed circumstances justify re-detention and that no less restrictive alternative—including the ATD supervision that

functioned for four and a half years—can reasonably mitigate any identified danger or flight risk.

Petitioner seeks release during the pendency of this Petition and alleges as follows:

## STATEMENT OF FACTS

### A. Initial Detention, INA § 236 Release, and Supervision

1. Petitioner, Massiel Urrutia Castellon, is a native and citizen of Nicaragua, born on August 4, 1993. *Ex. 1: Nicaraguan passport No. C01851663, Expiration Date: 05/11/2025.*

2. Petitioner fled Nicaragua in fear of persecution on account of her political opinion, her religious background, and her opposition to the Nicaraguan government. *Ex. 2: Petitioner's Declaration*.

3. Following the April 2018 insurrection in Nicaragua, she and her family, devout Catholics, participated in peaceful marches and protests demanding democracy and justice for those who had been killed and unlawfully imprisoned by the communist Sandinista government and paramilitaries. *Ex. 2.* Approximately 400 Nicaraguans lost their lives at the hands of the national police and government supporters, and that the government's repression fell in particular upon the

Catholic Church, including bishops, priests, lay leaders, and members of Catholic organizations. *Ex. 2*.

4. Petitioner and her family were subjected to harassment and intimidation by neighbors, the national police, and supporters of the government. Her mother received threats from the national police at work and a summons letters was sent to the family home directing them to appear for interviews on account of their participation in the marches and their affiliation with Catholic Church groups. *Id.* Those allegations have never been adjudicated.

5. Petitioner entered the United States without inspection on or about February 2, 2022, and was apprehended at or near Otay Mesa, California.

6. On February 4, 2022, DHS issued a Notice to Appear.

7. On February 6, 2022, ICE served Petitioner with the Order of Release on Recognizance, Form I-220A. *Ex. 3: Order of Release on Recognizance, Form I-220A.* The OREC states that "[y]ou have been arrested and placed in removal proceedings," and that "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions."

8. ICE did not impose a bond. *Id.*

9. ICE also served Petitioner with Form 71-071, ATD Enrollment — Notice to Alien, advising that her "release is contingent upon [her] enrollment and successful participation in an Alternatives to Detention (ATD) program," that she would "be subject to electronic monitoring and may be subject to a curfew," and that failure to comply "will result in a redetermination of [her] release conditions or [her] arrest and detention." *Ex. 4: ATD Enrollment — Notice to Alien, ICE Form 71-071.*

10. Petitioner enrolled in ATD and BI SmartLINK and submitted to the supervision conditions ICE imposed. *Ex. 4; Ex. 5: BI SmartLINK participant agreement and compliance history.*

11. Conditions of release imposed on Petitioner included to register for BI SmartLINK and submit daily pictures of her face for two weeks. Thereafter, she was instructed to appear at the ICE Los Angeles Field Office to verify her address. *Ex. 2.*

12. ICE was not authorized to release Petitioner if she posed a danger to the community or a risk of flight. Its decision to release her on February 6, 2022 therefore necessarily reflected a determination that she was neither, and that supervised release was sufficient to secure her appearance and protect the public.

13. Petitioner has resided continuously in the interior of the United States since her release in February 2022.

14. Petitioner also reported in person as directed. The Personal Report Record maintained by ICE on the continuation page of her Form I-220A reflects reporting entries dated March 21, 2022 and September 29, 2022, with successive reporting dates assigned by her deportation officer. On the last appointment, ICE notified her she no longer had to report and she would have to appear in immigration court. *Exs. 2, 3.*

15. Petitioner lived openly at the addresses she reported to ICE (and to the immigration court).

16. Between February 2022 and August 2026, ICE never found that Petitioner violated any condition of her release, never initiated a redetermination of her release conditions, and never took any step to revoke her release. *Ex. 2.*

17. Petitioner has no criminal record of any kind, in the United States or anywhere else.

**B. Removal Proceedings and the *In Absentia* Removal Order**

18. On November 3, 2022, DHS issued Petitioner a Notice to Appear superseding the Notice to Appear issued February 4, 2022, placing her in removal proceedings under INA § 240 and charging her as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. *Ex. 6: Notice to Appear dated November 3, 2022.*

19. She pursued applications for asylum under INA § 208, withholding of removal under INA § 241(b)(3), and protection under the Convention Against Torture before the immigration court.

20. On August 30, 2024, Petitioner married Kenneth Josue Blandon, a United States Citizen, in Ko Olina, Hawaii. *Ex. 7: Marriage Certificate.* Mr. Blandon is a California Deputy Sheriff currently assigned to the Twin Towers Correctional Facility in Los Angeles, California. *Ex. 2*.

21. On November 29, 2024, Mr. Blandon filed a Form I-130, Petition for Alien Relative, on his wife's behalf. *Ex. 8: I-130 Approval Notice.*[1]

22. On January 21, 2025, Petitioner appeared in immigration court for an individual merits hearing on her applications for asylum, withholding of removal, and protection under the Convention Against Torture. She completed direct testimony. The matter was then set over to May 19, 2025, for cross-examination.

23. Petitioner was represented by Alan K. Abrams, Esq., a sole practitioner in Century City, California. *Ex. 2.* On April 25, 2025, Mr. Abrams

---

[1] USCIS approved the petition on December 30, 2025. After the I-130 was approved, Petitioner filed a Form I-601A, Application for Provisional Unlawful Presence Waiver. *Ex. 9: Form I-601A Receipt Notice and USCIS Biometrics Appointment Notice*.

suffered a spontaneous subarachnoid hemorrhage. He was transported to the emergency department and admitted to the intensive care unit where he remained until May 7, 2025. *Ex. 10: Medical documentation concerning former counsel*.

24. Due to his health, Mr. Abrams was unable to appear in court for the next 6 months. *Id.*

25. Several days before the May 19, 2025 hearing, Mr. Abrams telephoned Petitioner, told her that he had been ill, and told her that the court would be cancelled and rescheduled for a later date. *Ex. 2.* Petitioner asked Mr. Abrams several times whether she needed to go. He clearly stated: “No, you do not need to attend.” *Id.* Petitioner trusted him and followed his advice. *Ex. 2*.

26. Relying on her attorneys explicit instruction, she did not appear in Court on May 19 2025. *Ex. 2*.

27. On May 19, 2025, and the Immigration Judge (“IJ”) ordered Petitioner removed *in absentia*.

28. Mr. Abrams filed a motion to reopen (“MTR”) on June 18, 2025, supported by his own declaration and medical documentation. However, he did not disclose to the Immigration Court that he had instructed Petitioner not to appear. *Ex. 11: First Motion to Reopen.*

29. On July 10, 2025, the IJ denied the motion finding that counsel had thoroughly documented *his* good cause for failing to appear in but the motion did not explain why the [Petitioner] failed to appear. *Ex. 12: MTR Denial Order*.

**C. Renewed Motion to Reopen and Present Equities**

30. On August 14, 2026, present counsel filed a Renewed Motion to Reopen and Rescind *In Absentia* Order of Removal Due to Ineffective Assistance of Counsel, and Request for a Stay of Removal. *Ex. 13: EOIR Automated Case Information.* That motion remains pending before the IJ.

**D. Arrest at the USCIS Fingerprint Appointment and Present Custody**

31. On August 6, 2026, Petitioner was scheduled to appear for biometrics processing in connection with her I-601A waiver at a USCIS Application Support Center in Los Angeles, California. Petitioner complied with the appointment.

32. At the appointment, USCIS alerted ICE of her presence and ICE/ERO took her into physical custody. She has been detained at the Adelanto ICE Processing Center since that date.

33. Petitioner was not apprehended while absconding. She was not apprehended while evading supervision. She was not fleeing. She was standing in a Government office at an appointment the Government itself had scheduled and

required her to attend, in order to complete a step in a benefit application the Government was actively adjudicating in order for her to seek lawful status.

34. At no time was Petitioner told to get her affairs in order because she would be taken into custody for an undefined amount of time. At no time was she given any notice that her release would be revoked, that she was accused of violating any condition of her release, or that ICE had made any determination bearing on her custody. *Ex. 1.*

35. Before re-detaining Petitioner, Respondents gave her no meaningful opportunity to contest the revocation of her release or to demonstrate that she remained neither a danger nor a flight risk.

36. Upon information and belief, Respondents served no written revocation notice, no warrant, no Form I-286, and no Form I-203 stating the basis for revoking Petitioner's release.

37. Upon information and belief, Respondents have identified no process of any kind in place to ensure that individuals in Petitioner's position — persons previously released by ICE and living in the community under Government-approved conditions — are not taken into physical custody improperly.

38. Respondents did not treat the May 19, 2025 *in absentia* order as a basis for detaining Petitioner. For approximately fifteen months after that order was entered, ICE continued Petitioner on ATD supervision and took no step to call

her or revoke her release. During that same period, USCIS approved her husband's I-130 petition and accepted, processed, and scheduled biometrics on her I-601A application. *Exs. 2, 8, 9*.

39. No neutral decisionmaker has made any finding — at any time, before or after Petitioner's arrest — that Petitioner is a danger to the community, that she poses a risk of flight, that she violated any condition of her release, or that any condition or combination of conditions short of physical confinement would be inadequate.

40. The harm to Petitioner's household is severe. Petitioner's USC husband is diagnosed with Adjustment Disorder with Anxiety causing functional impairment in the areas of daily activities, social relationships, and occupation, resulting from sleep disturbance, restlessness, racing thoughts, and trouble concentrating. *Ex. 14: Medical Records of Kenneth Blandon.* He demonstrated a marked increase in difficulty concentrating and increased irritability at work in a correctional facility, a setting in which sustained attention to his surroundings is a condition of his own safety and the safety of others. *Id.*

## LEGAL FRAMEWORK

### A. Habeas Jurisdiction and Fifth Amendment Liberty

41. Federal habeas review is available to test the legality of immigration detention. Section 2241 authorizes relief where a person is held "in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas remains available to challenge continued custody after a removal order becomes final *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

42. The Due Process Clause of the Fifth Amendment protects both citizens and noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (Fifth Amendment protections apply to noncitizens "whether their presence here is lawful, unlawful, temporary, or permanent"). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690; *accord Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The protection runs to citizens and noncitizens alike. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up); *Demore v. Kim*, 538 U.S. 510, 523 (2003).

43. Petitioner does not seek review of the *in absentia* removal order or the merits of any removal proceeding. She challenges the legality of her present detention and the procedures through which ICE revoked her prior OREC/ATD release. The jurisdictional limits applicable to review of removal orders therefore do not bar this collateral detention challenge.

44. A noncitizen previously released from physical custody under conditions of supervision may possess a protected liberty interest in continued

conditional release. Respondents may not revoke that liberty without constitutionally adequate procedures.

45. Petitioner does not allege that ICE categorically lacked statutory authority to rearrest her. INA § 236(b), 8 U.S.C. § 1226(b), permits revocation of a prior release and rearrest under the original warrant. The issue is whether Respondents exercised that authority consistently with due process of the Fifth Amendment and applicable legal requirements.

46. Once a removal order becomes administratively final, the IJ generally lack authority to redetermine custody, and neither the IJ nor the BIA may compel DHS to initiate post-order review under 8 C.F.R. § 241.13. *Matter of W-F-D-*, 29 I. & N. Dec. 854, 857–58 (BIA 2026). The available post-order mechanisms are a written DHS custody-review request and federal habeas.

47. Likewise, *Jennings v. Rodriguez*, 583 U.S. 281 (2018), does not resolve this case. *Jennings* held that §§ 1225(b), 1226(a), and 1226(c) do not themselves require periodic bond hearings. The Court expressly declined to reach the constitutional questions and remanded them. *Id.* at 313–14. *Jennings* says nothing about whether the Government may extinguish an existing, Government-conferred liberty status without notice or a hearing.

48. This Petition therefore does not concern the ordinary procedures applicable to an initial custody determination. It concerns Respondents' revocation

of Petitioner's existing release status and her re-detention without *any* notice, a neutral hearing, or a constitutionally adequate opportunity to contest whether materially changed circumstances justified detention.

**B. Due Process Governing Revocation of Conditional Liberty**

49. Evaluating the contours of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

50. Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Once an individual is granted conditional release, she may have a protected liberty interest in remaining in the community — and an attendant right to procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey*, 408 U.S. at 482 (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare that form of release with the parolee's liberty

interest as described in *Morrissey*. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010).

51. In *Morrissey*, the Supreme Court explained that conditional liberty enables a person "to do a wide range of things" available to individuals who have never been convicted of any crime — to live at home, work, be with friends and family, and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Though the Government "properly subjects him to many restrictions not applicable to other citizens," including monitoring and reporting, his "condition is very different from that of confinement in a prison." *Id.* Moreover, she "relie[s] on at least an implicit promise" that her liberty will be revoked only if she fails to live up to its conditions. *Id.* Revocation "inflicts a grievous loss," and as such she possesses a protected interest in her continued liberty. *Id.* at 481–84.

52. Petitioner lived at the address ICE recorded, submitted to ongoing ATD and BI SmartLINK supervision, pursued her asylum claim through the immigration court, married a United States citizen who serves as a sworn peace officer, filed an immediate-relative petition, and formed the enduring attachments of normal life across four and a half years.

53. Multiple district courts have applied these principles to hold that a noncitizen released from immigration custody has a protected liberty interest in

remaining out of custody absent constitutionally sufficient justification for re-detention.

54. In *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court held that even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); *Jorge M.F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

55. Civil immigration detention is constitutionally permissible only to prevent flight or to protect against danger to the community. *Zadvydas*, 533 U.S. at 690, 699. Those are the same two factors that were necessarily determined when ICE released Petitioner on an OREC with ATD supervision in February 2022. *Exs. 3, 4, 5*; *see Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167 (S.D. Cal. 2025) ("In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'"); *Sun v. Santacruz*, No. 5:25-cv-

02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137, 1143 (9th Cir. 2018). Once released, Petitioner had a liberty interest "in remaining at liberty unless [she] no longer meets those criteria." *Espinoza v. Kaiser*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (cleaned up).

56. Other courts have held similarly. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

57. The length of a petitioner's residence and the ties formed during it strengthen the private interest. *See Tinoco v. Noem*, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025); *Garcia v. Andrews*, 2025 WL 1927596, at *4; *C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) (protected liberty interest in "approximately four years on parole").

58. An agency's prior release decision may support an inference that, at the time of release, supervision adequately addressed flight and danger concerns.

59. To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court should apply the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (assuming, without deciding, that *Mathews* applies in the immigration detention context, and collecting authority). The *Mathews* test balances three factors:

a. The private interest that will be affected by the official action;

b. The risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

c. The Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

60. Each *Mathews* factor supports Petitioner's right to due process before or promptly after re-detention.

**C. The Pending Reopening and the *In Absentia* Record**

61. Petitioner acknowledges that the *in absentia* removal order became administratively final upon entry. 8 C.F.R. § 1241.1(e). The pending renewed motion to reopen does not itself render that order nonfinal. Although 8 C.F.R. § 1003.23(b)(4)(ii) provides an automatic stay for a qualifying in absentia motion, the regulation permits only one such motion. Because Petitioner's present filing is a renewed motion following denial of the first motion to reopen, Petitioner does not rely on the renewed motion alone as creating an automatic stay. She seeks any necessary express stay separately.

62. The pending motion is nevertheless directly relevant to custody. It identifies a plausible, evidence-supported explanation for the only hearing Petitioner ever missed; it demonstrates her diligent pursuit of administrative remedies; and it materially weakens any generalized inference that she will evade proceedings or removal.

63. The pending motion and its asserted ineffective-assistance basis are relevant to the detention analysis only insofar as they bear on the individualized assessment of flight risk and the reasonableness of re-detention; Petitioner does not ask this Court to adjudicate the merits of the motion.

**D. Alternative Post-Order Framework: § 1231(a)(6) and *Zadvydas***

64. If Respondents contend that Petitioner's detention is governed by 8 U.S.C. § 1231 because the *in absentia* order remains administratively final, the

initial ninety-day removal period expired long ago. Her continued detention is then governed, if at all, by § 1231(a)(6).

65. Section 1231(a)(6), construed in light of due-process concerns, authorizes detention only for a period reasonably necessary to effect removal and does not permit indefinite detention. *Zadvydas v. Davis*, 533 U.S. 678, 689, 699–701 (2001).

66. After six months of post-order physical detention, a petitioner who provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future triggers the Government's obligation to rebut that showing with evidence. *Zadvydas*, 533 U.S. at 701.

67. Petitioner alleges that the ninety-day removal period has expired but does not claim that expiration alone requires release. Nor does she invoke the six-month *Zadvydas* presumption unless and until she has spent six months in post-order physical custody. She preserves the claim because the relevant period of foreseeability narrows as detention continues.

68. Petitioner does not concede that § 1231 supplies the correct detention authority and does not concede that any § 1231 analysis resolves the separate constitutional and APA defects in her re-detention.

69. A final removal order does not eliminate Petitioner's liberty interest in freedom from physical confinement or authorize indefinite detention. As *Zadvydas*

explains, the relevant choice is not between imprisonment and unrestricted presence in the United States, but between physical confinement and supervised release subject to enforceable conditions. *Zadvydas*, 533 U.S. at 696.

70. *Zadvydas* recognizes that release may be conditioned on appropriate supervision and that a released person may be returned to custody for a violation of those conditions. *Id.* at 700. Here, Respondents have not identified in writing any violation of Petitioner's OREC, ATD, or BI SmartLINK conditions that justified re-detention.

**PARTIES**

71. Petitioner Massiel Urrutia-Castellon is detained by immigration authorities and remains in custody at the Adelanto ICE Processing Center, or another facility under the control and direction of Respondents.

72. Respondent Todd Blanche is the Attorney General of the United States. He has authority to supervise the implementation and enforcement of the INA, including immigration adjudication functions carried out through the Executive Office for Immigration Review. He is sued in his official capacity.

73. Respondent Markwayne Mullin is the Secretary of Homeland Security. He is responsible for immigration enforcement functions vested in the Department of Homeland Security. He is sued in his official capacity.

74. Respondent Todd Lyons is the Acting Director of United States Immigration and Customs Enforcement. He is responsible for ICE enforcement and detention operations. He is sued in his official capacity.

75. Respondent Ernesto Santacruz, Jr. is the Acting Field Office Director, Los Angeles Field Office, United States Immigration and Customs Enforcement, Enforcement and Removal Operations. He is responsible for detention and removal operations within the Los Angeles Field Office area of responsibility. He is sued in his official capacity.

76. Respondent David Marin is the Warden of the Adelanto ICE Processing Center. He is the immediate custodian of Petitioner and bears responsibility for detaining her. He is sued in his official capacity.

77. Respondent Sirce Owens is the Acting Director of the Executive Office for Immigration Review (EOIR), a component agency of the Department of Justice responsible for conducting removal and bond hearings of noncitizens. EOIR is comprised of a lower adjudicatory body administered by IJs and an appellate body known as the Board of Immigration Appeals (BIA). IJs issue bond redetermination decisions, which are then subject to appeal to the BIA. She is sued in her official capacity.

## JURISDICTION AND VENUE

78. Petitioner is in the physical custody of Respondents and is detained at

the Adelanto ICE Processing Center in Adelanto, California, within the Central District of California. A substantial part of the events or omissions giving rise to Petitioner's claims occurred in this District, including her arrest at the USCIS Application Support Center in Los Angeles, California.

79. Petitioner and her immediate custodian are within the territorial jurisdiction of this Court. Venue is also proper because a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this District and relevant Respondents perform their official duties here. 28 U.S.C. § 1391(e); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493–94 (1973).

80. This Court may grant habeas relief under 28 U.S.C. § 2241 and appropriate declaratory and equitable relief under 28 U.S.C. §§ 2201–2202 and its equitable authority to remedy violations of the Fifth Amendment and applicable federal law.

81. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Fifth Amendment, the Immigration and Nationality Act, and the Administrative Procedure Act.

82. The United States has waived sovereign immunity as to Petitioner's claims for non-monetary relief. 5 U.S.C. § 702

83. This Court has habeas jurisdiction under 28 U.S.C. § 2241 because Petitioner challenges her present physical immigration detention and seeks release or other relief directed to the lawfulness of that custody. Petitioner is confined in this District and names her immediate custodian, the Warden of the Adelanto ICE Processing Center, as a respondent. See *Doe v. Garland*, 109 F.4th 1188, 1192–95 (9th Cir. 2024); *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 443, 447 (2004).

84. No jurisdictional bar applies. Petitioner does not seek district-court review of the validity of the *in absentia* removal order or the merits of her removal proceedings. She challenges the statutory and constitutional legality of her present detention and ICE's completed decision to revoke her prior OREC/ATD release. Section 1252(g) therefore does not bar this collateral detention challenge. See *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Nor does § 1252(a)(2)(B)(ii) foreclose review of Petitioner's legal and constitutional claims; she challenges the legal limits and procedures governing her confinement, not a discretionary judgment. See *Kucana v. Holder*, 558 U.S. 233, 246–48, 251–52 (2010); *Zadvydas*, 533 U.S. at 687–88.

85. Petitioner challenges the legality of her present detention and Respondents' completed re-detention action. Her habeas claim is collateral to the

removal proceedings and seeks relief from allegedly unlawful physical custody. See *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## REQUIREMENTS OF 28 U.S.C. §2243

86. The Court must grant the petition for writ of habeas corpus or issue an order to show cause "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return within three days unless, for good cause, additional time not exceeding twenty days is allowed. 28 U.S.C. § 2243.

87. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

## LEGAL ARGUMENT

### A. Respondents Violated Procedural Due Process by Re-Detaining Petitioner Without Constitutionally Adequate Procedures

88. This case concerns the re-detention of a petitioner whom ICE released from custody on OREC with ATD and BI SmartLINK supervision and permitted to live in the community for approximately four and a half years. *Exs. 2, 3, 4, 5.*

89. Petitioner was not arrested after absconding. She maintained a fixed address known to ICE and the Immigration Court, reported as directed, appeared

for her merits hearing, and completed direct testimony. She is married to a U.S.-citizen Los Angeles County Sheriff's Deputy, has an approved I-130 petition, and has a pending I-601A application. Respondents instead re-detained her at a mandatory USCIS biometrics appointment, without advance written notice, a neutral pre-deprivation hearing, or a meaningful opportunity to contest the asserted basis for revoking her release. *Ex. 2, 7, 8, 9, 11*.

90. ICE's February 2022 OREC release created a protected liberty interest in Petitioner's continued freedom from physical confinement, subject to the conditions of her release. ICE permitted Petitioner to remain in the community under ATD supervision for approximately 4 years, an implicit assurance that her liberty would not be revoked absent adequate justification and process. See *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032–34 (N.D. Cal. 2025); *Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137, 1143–47 (9th Cir. 2018); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019). Respondents deprived Petitioner of that interest when they revoked her release and re-detained her without constitutionally adequate process.

91. The question is not whether ICE possesses statutory authority to rearrest a person previously released under INA § 236. It is whether Respondents exercised that authority consistently with the Fifth Amendment. Due process ordinarily requires notice and a meaningful opportunity to be heard before the

Government deprives a person of a substantial liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976). ICE's prior release also reflects that detention was not then necessary to address flight risk or danger. *Saravia*, 280 F. Supp. 3d at 1176.

92. The Government must therefore provide a constitutionally sufficient basis and process before revoking established conditional liberty, absent genuine exigency. Here, Respondents have identified no individualized, post-release fact establishing that Petitioner became a danger or flight risk, and they afforded her no opportunity to challenge the factual or legal basis for re-detention before or promptly after it occurred.

93. Each *Mathews* factor favors meaningful process before, or at minimum promptly after, re-detention.

94. The private-interest factor strongly favors Petitioner. She had lived openly under Government-approved supervision for four and a half years, married a U.S. citizen who serves as a Los Angeles County Sheriff's Deputy, obtained approval of an immediate-relative petition, and pursued an I-601A application that USCIS was actively processing when she was arrested. *Exs. 3-5, 7-9.* Re-detention deprived her of physical liberty, disrupted her household, and impaired her ability to pursue the pending MTR, her immigration-benefit process, and this habeas action. *See Ortega*, 415 F. Supp. 3d at 970.

95. The deprivation also affects Petitioner's U.S.-citizen spouse and their shared household. Contemporaneous third-party clinical documentation, generated before arrest and outside this litigation, corroborates the anticipated and actual harm caused by their separation. *Ex. 14.*

96. The risk of erroneous deprivation is high. Due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews*, 424 U.S. at 333. Here, Respondents identified no release violation; detained Petitioner without warning to get her affairs in order at an appointment the Government required her to attend; and gave her no practical opportunity to consult counsel, assemble evidence, or contest whether changed circumstances justified detention. A notice and individualized hearing would have materially reduced that risk. See *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047–48 (E.D. Cal. 2025).

97. Respondents' own conduct confirms the risk of error. If the May 2025 *in absentia* order, standing alone, justified re-detention, ICE could have acted when that order issued. ICE instead continued Petitioner on ATD supervision for approximately fifteen months without asking her to report to provide an explanation. USCIS approved the I-130 *after* the order had been issued, and then USCIS later required Petitioner to report for biometrics on her pending I-601A where they arbitrarily decided to arrest her without warning. Respondents'

prolonged acquiescence in supervised release undermines any assertion that the prior order alone rendered immediate physical detention necessary.

98. The Government's incremental burden in providing notice and a meaningful hearing was minimal. Due process generally requires a hearing before a liberty deprivation. Exceptions apply only where immediate action is necessary or pre-deprivation process is impracticable. *Zinermon v. Burch*, 494 U.S. 113, 127–28 (1990).

99. Neither circumstance existed here because Petitioner was not encountered by chance, evading supervision, or fleeing. She voluntarily appeared at a Government-scheduled appointment that she was required to attend to prevent USCIS from deeming her I-601A application abandoned. *Ex. 9*. Respondents knew her home address, immigration history, approved I-130, pending I-601A, and where she would be on August 6, 2026 at 2pm. They had ample opportunity to provide notice and individualized process before taking her into custody. See *Ortega*, 415 F. Supp. 3d at 970; *Singh*, 803 F. Supp. 3d at 1048.

100. Using a mandatory benefits appointment to revoke liberty without notice or a hearing also undermines the Government's own administrative process. USCIS required Petitioner to appear to preserve her pending benefit request; ERO then used her compliance as the occasion for re-detention. That sequence

reinforces the need for an individualized, non-arbitrary determination before ICE may replace existing supervision with physical custody.

101. A pre-deprivation hearing would have informed Petitioner of the asserted grounds for re-detention and afforded a meaningful opportunity to contest them before her confinement disrupted her household, access to counsel, and immigration-benefit process. At a minimum, where Respondents contend that exigency made pre-deprivation process impossible, due process requires prompt, meaningful post-deprivation review. See *Pinchi*, 792 F. Supp. 3d at 1031–37; *Espinoza v. Kaiser*, No. 1:25-cv-01101, 2025 WL 1918679, at *13–14 (E.D. Cal. Sept. 5, 2025).

102. Courts in this Circuit have recognized that noncitizens previously released on parole, recognizance, bond, or ATD supervision are entitled to meaningful process before or promptly after re-detention. See *Singh*, 803 F. Supp. 3d at 1047–48; *Pinchi*, 792 F. Supp. 3d at 1031–37; *J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 3229261, at *5–7 (E.D. Cal. Oct. 16, 2025); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2481693, at *3–6 (E.D. Cal. Aug. 28, 2025). Respondents supplied neither before revoking Petitioner's release.

103. If the Court orders a hearing to remedy the due-process violation, Respondents should bear the burden to prove by clear and convincing evidence

that Petitioner presently poses a flight risk or danger requiring physical detention and that less restrictive conditions—including the ATD conditions that functioned for four and a half years—are inadequate. The severity of physical detention and the Government's prior release decision warrant that allocation. See *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

104. This requested burden is consistent with the due-process principles recognized in *Zadvydas*: civil detention implicates the core liberty interest in freedom from physical restraint, and heightened safeguards are particularly important where detention is potentially prolonged or the Government seeks to justify restraint on danger grounds. *Zadvydas v. Davis*, 533 U.S. 678, 690–92 (2001). The request here rests principally on the unconstitutional revocation of Petitioner's established liberty, not on a contention that *Zadvydas* itself requires a new IJ bond hearing.

105. The finality of the *in absentia* removal order does not supply an alternative IJ or BIA forum to cure these defects. *Matter of W-F-D-* holds that IJs generally lack jurisdiction to redetermine custody after an order becomes administratively final and that neither the IJ nor the Board may compel DHS to begin a § 241.13 post-order custody review. *Matter of W-F-D-*, 29 I. & N. Dec. 854, 857–58 (BIA 2026). The decision recognizes two routes: a written request to DHS under 8 C.F.R. § 241.13 and federal habeas. That DHS process does not

displace the Court's authority to remedy the distinct constitutional challenge to ICE's completed re-detention action.

106. *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), does not control. It addressed whether due process required the Government to bear the burden at a second bond hearing based solely on the duration of § 1226(a) detention after the noncitizen had received an initial individualized hearing. This case instead challenges ICE's revocation of an existing OREC/ATD release without advance notice, an individualized determination, or a neutral hearing.

107. The appropriate remedy is restoration of the status quo, release under Petitioner's prior OREC and ATD conditions. Alternatively, Respondents should be required to provide a prompt, constitutionally adequate hearing that addresses whether changed circumstances justify re-detention and whether less restrictive alternatives can mitigate any current danger or flight concern. See *Pinchi*, 792 F. Supp. 3d at 1031–37; *Singh*, 803 F. Supp. 3d at 1047–48.

**B. Continued Detention Is Arbitrary and Violates Substantive Due Process**

108. Civil immigration detention is constitutionally permissible only to the extent it remains reasonably related to a legitimate, nonpunitive regulatory purpose. The pertinent interests are ensuring appearance and protecting the community; detention that does not rationally serve either interest, or is excessive

in relation to them, is punitive and violates substantive due process. *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001).

109. Respondents' re-detention of Petitioner bears no demonstrated reasonable relationship to either purpose. Petitioner complied with OREC, ATD, and BI SmartLINK supervision for approximately four and a half years. She was re-detained when she voluntarily appeared at the USCIS appointment the Government required her to attend, not attempting to abscond. The circumstances of arrest, the absence of a disclosed individualized determination that circumstances had materially changed undermine any claim that immediate physical detention was necessary to address flight or danger.

110. The May 19, 2025 absence from her hearing does not support a contrary conclusion. Petitioner's former counsel suffered a catastrophic medical emergency, he instructed her not to attend and failed to inform the Immigration Court of that instruction in the first motion to reopen. *Ex. 11.* Petitioner's renewed MTR, supported by her declaration presents that omitted account as an ineffective-assistance claim. *Ex. 15: Renewed Motion to Reopen.* Her approved I-130, pending I-601A, U.S.-citizen spouse, and active effort to reopen and rescind the removal order provide powerful incentives to appear and pursue lawful process. ICE itself left her under ATD supervision for approximately fifteen months after the in absentia order was entered , and even after the first motion was denied.

111. Respondents have identified no present danger, flight risk, or change in circumstances showing that continued physical detention is necessary rather than the supervision that successfully governed Petitioner's release for four and a half years. Her detention is therefore excessive in relation to any legitimate regulatory purpose.

112. The fundamental purpose of removal-related detention is to ensure the noncitizen's presence when removal may lawfully occur. Where that objective is not practically advanced by physical custody, detention no longer bears a reasonable relation to its asserted purpose. *Zadvydas*, 533 U.S. at 690, 699. Here, Petitioner's longstanding compliance with supervision and her appearance at the mandatory USCIS appointment materially undermine any assertion that detention was required to secure her appearance. Respondents did not present any individualized finding that she poses a danger to the community before re-arresting her. The continued detention is therefore arbitrary and excessive as applied to Petitioner.

**C. Respondents' Re-Detention Decision Was Arbitrary, Capricious, and Procedurally Unlawful Under the APA**

113. Petitioner challenges ICE's completed decision to revoke, or to treat as revoked, her OREC/ATD release and to arrest and confine her at the USCIS

support center. Petitioner does not challenge a generalized enforcement policy, the merits of the in absentia removal order, or a future discretionary custody decision.

114. The challenged action is final for APA purposes. It consummated ICE's decision-making on whether to end Petitioner's community-based release and imposed immediate legal consequences by placing her in physical immigration custody. The action was neither tentative nor interlocutory; it ended her actual liberty under the OREC and ATD conditions. See *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); 5 U.S.C. § 704.

115. Petitioner seeks review of legal compliance and reasoned decision-making, not judicial substitution of judgment for a discretionary enforcement determination lawfully made. Respondents may exercise discretion over custody, but they may not disregard material facts, depart from their prior case-specific release determination without explanation, or proceed without the procedures that law requires. See *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983).

116. The disclosed record does not identify an individualized basis for re-detention. It does not identify a violation of Petitioner's OREC or ATD conditions; a present finding that she is dangerous or likely to flee; or a reason why the existing supervision regime no longer sufficed. Instead, the material facts point in the opposite direction: Petitioner complied with OREC, ATD, and BI SmartLINK

supervision for approximately four and a half years; maintained a known residence; appeared for proceedings until the counsel-instructed May 2025 absence; has a pending renewed MTR explaining that absence; is married to a U.S.-citizen peace officer; has an approved I-130; and appeared at the USCIS office required to continue processing her pending I-601A. *Exs. 2, 3-5, 7-9, 10-12, 15.*

117. ICE also failed to acknowledge and explain its departure from the Government's prior release determination. ICE left Petitioner under ATD supervision for approximately fifteen months after the *in absentia* order; USCIS approved the I-130 during that period; and USCIS subsequently compelled her appearance for I-601A biometrics. An agency changing course must account for the facts and circumstances underlying its earlier action, including serious reliance interests. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30–31 (2020). Respondents have provided no contemporaneous, individualized explanation for why detention suddenly became necessary or why the supervision that functioned for years was inadequate.

118. The arrest at the USCIS office further supports the APA claim. USCIS required Petitioner's attendance to avoid abandonment of her pending I-601A application; ERO used that required appearance as the occasion to arrest her. Petitioner does not contend that a pending I-601A creates a freestanding right to

release or constrains ICE's lawful authority. Rather, the I-601A appointment, Petitioner's compliance, and the Government's use of that compliance to effect re-detention are material circumstances that Respondents were required to consider and explain.

119. Accordingly, to the extent Respondents' re-detention decision is reviewable under the APA, it was arbitrary, capricious, contrary to law, and taken without observance of procedures required by law. 5 U.S.C. § 706(2)(A), (D). The Court should set aside the completed re-detention action and restore the status quo ante, without foreclosing any future custody action that complies with the Constitution, applicable statutes and regulations, and reasoned decision-making requirements.

**D. In the Alternative, If § 1231 Governs, Continued Detention Is Limited by § 1231(a)(6) and *Zadvydas***

120. If Respondents contend that Petitioner is detained under 8 U.S.C. § 1231 because the *in absentia* order remains administratively final, the initial ninety-day removal period has expired. Continued detention is then authorized, if at all, under § 1231(a)(6), which permits detention only for the period reasonably necessary to effect removal. *Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001).

121. Petitioner does not contend that the expired ninety-day period alone requires release. Nor does she contend that the renewed MTR, without an operative

stay, automatically prevents removal. The renewed MTR is nevertheless material to any asserted flight-risk rationale because it presents previously omitted evidence that former counsel suffered a serious medical emergency and affirmatively instructed Petitioner not to attend the May 19, 2025 hearing. It is supported by Petitioner's declaration and *Lozada* evidence and seeks rescission of the resulting *in absentia* order. See *Lo v. Ashcroft*, 341 F.3d 934, 939–42 (9th Cir. 2003).

122. Respondents have confirmed that ICE submitted an electronic travel-document request to the Embassy of Nicaragua and notified the Nicaraguan consulate of Petitioner's detention. Respondents report that no consular interview has occurred and provide no information that a travel document has issued, a removal date has been scheduled, or a third country has been designated. *Ex. 16: email correspondence from ERO.* These facts do not establish a concrete, reasonably foreseeable timeframe for removal.

123. Petitioner does not rely on the six-month *Zadvydas* presumption as the sole basis for present relief. Rather, she pleads that, if detention continues under § 1231(a)(6), the Government must establish that removal remains significantly likely in the reasonably foreseeable future. The alternative § 1231(a)(6) claim neither concedes the validity of ICE's re-detention nor displaces Petitioner's

independent procedural-due-process and APA claims challenging the manner in which ICE revoked her OREC/ATD release.

**E. The Primary Remedy Is Restoration of the Prior Release; a Hearing Is Alternative Relief**

124. The appropriate remedy for an unconstitutional revocation of established conditional liberty is restoration of the status quo ante: Petitioner's release under the OREC and ATD conditions in effect immediately before re-detention. That remedy places Petitioner where she would have been absent the procedural violation while preserving the Government's ability to pursue future custody action based on constitutionally adequate procedures and individualized grounds. See *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1031–37 (N.D. Cal. 2025); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047–48 (E.D. Cal. 2025).

125. A belated hearing does not erase the completed deprivation or automatically restore the time, family stability, access to counsel, and ability to pursue benefit and reopening proceedings lost through re-detention. The requested primary remedy is therefore immediate release on the prior OREC/ATD conditions—not merely an after-the-fact custody proceeding.

126. In the alternative, should the Court decline to restore the prior conditions immediately, it should order a prompt constitutionally adequate hearing. Respondents should bear the burden to establish by clear and convincing evidence

that materially changed circumstances make physical detention necessary because Petitioner presents a current danger or flight risk, and that no less restrictive alternative—including the ATD supervision that functioned for approximately four and a half years—can mitigate that risk. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

127. Because an IJ cannot redetermine post-final-order custody, *Matter of W-F-D-*, 29 I. & N. Dec. 854, 857–58 (BIA 2026), the Court should order immediate restoration of Petitioner's pre-detention OREC/ATD release conditions or, alternatively, constitutionally adequate process. Petitioner's alternative claim under § 1231(a)(6) remains cognizable in habeas.

## CLAIMS FOR RELIEF

### Claim One:

### Violation of the Fifth Amendment Procedural Due Process Clause — Revocation of Conditional Release and Re-Detention Without Constitutionally Adequate Process

128. Petitioner incorporates by reference all preceding allegations.

129. ICE released Petitioner under an OREC and ATD supervision in February 2022 and permitted her to remain in the community for approximately four and a half years. That conditional liberty gave rise to a protected interest in remaining free from physical confinement absent constitutionally adequate procedures.

130. Respondents revoked, or treated as revoked, Petitioner's conditional release and took her into physical custody at a required USCIS biometrics appointment without advance warning or notice, a disclosed individualized basis, a neutral hearing, or a meaningful opportunity to contest whether re-detention was justified.

131. Respondents have not identified a release violation, a material post-release change establishing that Petitioner became a danger or flight risk, or

a reason the supervision that had governed her release for years was inadequate.

132. Under *Mathews v. Eldridge*, Petitioner's substantial liberty interest, the high risk of erroneous deprivation without notice and a meaningful hearing, and the minimal burden of providing individualized process establish that Respondents violated the Fifth Amendment.

**Claim Two:**
**Violation of the Fifth Amendment Substantive Due Process Clause — Arbitrary Civil Detention**

133. Petitioner incorporates by reference all preceding allegations.

134. Civil immigration detention is permissible only to the extent it reasonably advances a legitimate, nonpunitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001).

135. Respondents re-detained Petitioner after years of OREC/ATD compliance, not while she was absconding or evading supervision, but while she complied with a Government-required biometrics appointment. The record identifies no individualized finding that physical detention is necessary to address a present danger or flight risk, or that less restrictive supervision is inadequate.

136. As applied to Petitioner, continued physical detention is arbitrary and excessive in relation to the Government's asserted regulatory interests and violates substantive due process.

**Claim Three:**
**Violation of the Administrative Procedure Act**
**Arbitrary, Capricious, and Procedurally Unlawful Re-Detention Action, 5 U.S.C. § 706(2)(A), (D)**

137. Petitioner incorporates by reference all preceding allegations.

138. The challenged agency action is ICE's completed decision to revoke, or treat as revoked, Petitioner's OREC/ATD release and to arrest and confine her at the USCIS office. The action consummated ICE's decision-making and had the immediate legal consequence of physical confinement. It is final agency action reviewable under 5 U.S.C. § 704. See *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

139. Petitioner does not ask the Court to substitute its judgment for a lawful discretionary custody decision. She challenges whether ICE considered the material circumstances and supplied the reasoned explanation

and procedures required by law before departing from its own prior, case-specific release determination.

140. The disclosed record identifies no individualized basis for re-detention; no stated OREC, ATD, or BI SmartLINK violation; no present finding of danger or flight risk; and no explanation why existing supervision was inadequate. It does not reflect consideration of Petitioner's sustained compliance, fixed residence, U.S.-citizen spouse, approved I-130, pending I-601A, pending MTR, or available less restrictive conditions.

141. Respondents' re-detention decision was arbitrary, capricious, contrary to law, and taken without observance of procedure required by law. 5 U.S.C. § 706(2)(A), (D). See *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983).

**Claim Four — Pled In The Alternative:**
**Continued Detention Under 8 U.S.C. § 1231(a)(6) Beyond the Period Reasonably Necessary to Effect Removal**

142. Petitioner incorporates by reference all preceding allegations.

143. If Respondents contend that the administratively final in-absentia removal order places Petitioner in post-removal-order custody, the initial ninety-day removal period has expired and continued detention is authorized, if at all, under 8 U.S.C. § 1231(a)(6).

144. Section 1231(a)(6) does not authorize detention beyond the period reasonably necessary to effect removal. *Zadvydas*, 533 U.S. at 699–701. Petitioner does not contend that expiration of the ninety-day period itself requires release, nor does she rely solely on the six-month *Zadvydas* presumption.

145. Respondents have confirmed that ICE submitted an electronic travel-document request to the Embassy of Nicaragua and notified the Nicaraguan consulate of Petitioner's detention. They report that no consular interview has occurred and identify no issued travel document, removal date, or third-country designation. *Ex. 16*. If Respondents cannot establish that removal is significantly likely in the reasonably foreseeable future, continued detention is unauthorized and Petitioner is entitled to release under appropriate conditions of supervision.

**EXHAUSTION**

146. No statutory exhaustion requirement bars this § 2241 petition.

Exhaustion in immigration habeas cases is prudential, not jurisdictional. *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011); *Laing v. Ashcroft*, 370 F.3d 994, 997–1000 (9th Cir. 2004).

147. Petitioner does not seek review of an IJ's discretionary custody determination. She challenges ICE's completed revocation of her OREC/ATD release and her resulting detention without constitutionally adequate process. Because the *in absentia* removal order is administratively final, an IJ generally lacks jurisdiction to redetermine custody, and neither the IJ nor the Board may compel DHS to initiate post-order custody review. *Matter of W-F-D-*, 29 I. & N. Dec. 854, 857–58 (BIA 2026).

148. A DHS request under 8 C.F.R. § 241.13 is an available avenue for post-order custody review, but it is not an IJ or BIA remedy and does not provide relief for ICE's completed constitutional and APA violations. The immigration court cannot adjudicate those claims, and further administrative exhaustion would not provide an adequate or timely remedy for Petitioner's ongoing physical detention or the risk of removal before this Petition is decided. The Court should therefore reach the merits.

## **IRREPARABLE HARM**

149. Ongoing detention pursuant to a constitutionally deficient re-detention decision constitutes irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976, 994–

95, 999 (9th Cir. 2017). Petitioner remains physically confined despite years of successful OREC/ATD supervision, without a disclosed individualized basis for revocation and without a meaningful opportunity to contest her re-detention.

150. Detention also inflicts concrete, ongoing harm on Petitioner and her household. It separates Petitioner from her U.S.-citizen husband, interrupts their shared household and her ability to pursue the pending MTR and I-601A process, and impairs her access to counsel in this action. Her husband's contemporaneous clinical records document anxiety-related functional impairment, including sleep disturbance, restlessness, racing thoughts, difficulty concentrating, and increased irritability at work, arising from their separation. *Ex. 14*.

151. Respondents have now confirmed that ICE submitted an electronic travel-document request to Nicaragua and notified the Nicaraguan consulate of Petitioner's detention. Although Respondents identify no consular interview, issued travel document, removal date, or third-country designation, those steps show that ICE is pursuing removal while this Petition remains pending. Removal before adjudication would materially impair Petitioner's ability to obtain effective relief from the challenged re-detention and to litigate her pending motion to reopen.

152. The balance of equities favors temporary protection from removal. Petitioner seeks only preservation of the status quo while the Court determines

whether ICE lawfully revoked her established conditional release and whether continued detention is authorized. Respondents identify no individualized danger, flight risk, release violation, or emergency that requires her removal before the Court can resolve this case.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this action;
2. Issue a writ of habeas corpus or an order to show cause under 28 U.S.C. § 2243 requiring Respondents to justify Petitioner's continued detention;
3. Declare that Respondents violated Petitioner's Fifth Amendment procedural due process rights by revoking, or treating as revoked, her OREC/ATD release and re-detaining her without constitutionally adequate notice, an individualized basis, and a meaningful opportunity to be heard;
4. Declare that Petitioner's continued detention is arbitrary and violates substantive due process;
5. Hold unlawful and set aside ICE's completed re-detention action under 5 U.S.C. § 706(2)(A) and (D);
6. Order Respondents to release Petitioner immediately under the OREC and ATD conditions in effect immediately before her August 6, 2026 re-detention, or under no more restrictive conditions necessary to effectuate the Court's order;
7. Alternatively, if the Court declines to order immediate release, order Respondents to provide a prompt constitutionally adequate hearing before a neutral decisionmaker. At that hearing, require Respondents to prove by clear and convincing evidence that materially changed circumstances make physical detention necessary because Petitioner presently poses a danger or flight risk and that no less restrictive alternative can reasonably mitigate that risk;
8. Alternatively, if Respondents establish that § 1231(a)(6) governs custody, order Petitioner's release under appropriate supervision unless Respondents establish that her removal is significantly likely in the reasonably foreseeable future;

9. Pending final disposition of this action, enjoin Respondents from removing Petitioner from the United States. Absent that relief, removal would moot or materially impair the Court's ability to grant effective habeas relief from the challenged detention and re-detention action;
10. Pending final disposition of this action, prohibit Respondents from transferring Petitioner outside the Central District of California without advance notice to Petitioner's counsel and leave of Court, if transfer would impair Petitioner's access to counsel or this Court's ability to adjudicate the Petition;
11. Retain jurisdiction to enforce the Court's orders;
12. Award Petitioner reasonable attorneys' fees and costs to the extent authorized by law; and
13. Grant all other relief the Court deems just and proper.

Dated: September 2, 2026

Respectfully Submitted,
*S/ Erika Roman-Maury*

Attorney for *Massiel Urrutia-Castellon*
Email: Erika@ELRLawgroup.com

EXHIBIT INDEX


| EXHIBITS | PAGE |
|---|---|
| # 1 Passport of Massiel Urrieta Castellon | 52 |
| # 2 Declaration of Massiel Urrieta Castellon | 54-58 |
| # 3 Order of Release on Recognizance | 60-64 |
| # 4 ATD Enrollment | 66 |
| # 5 BI Smart Link | 68 |
| # 6 Notice to Appear | 70-72 |
| # 7 Marriage Certificate | 74 |
| # 8 I-130 Approval Notice | 76 |
| # 9 I-601A Receipt Notice and Biometrics Appointment | 78 |
| #10 Medical Record of Attorney | 80 |
| #11 First Motion to Reopen | 82-109 |
| #12 Denial of First MTR | 111-112 |
| #13 EOIR Automated Case Information | 114 |
| #14 Medical Records of Kenneth Blandon | 116-124 |
| #15 Renewed MTR | 126-152 |
| #16 Email Correspondence From ERO | 154 |

EXHIBIT 1

Passport of Massiel Urrieta Castellon

Uploaded on: 02/12/2024 at 12:14:48 PM (Pacific Standard Time) Base City: LOS

3

REPUBLICA DE NICARAGUA

AUTORIDAD - AUTHORITY

FIRMA DEL TITULAR - BEARER'S SIGNATURE

REPUBLICA DE NICARAGUA

PASAPORTE
PASSPORT

TIPO/TYPE
P

CODIGO DEL PAIS/COUNTRY CODE
NIC

N°. DE PASAPORTE/PASSPORT N°
C01851663

APELLIDOS/SURNAMES
URRUTIA CASTELLON

NOMBRES/GIVEN NAMES
MASSIEL

NACIONALIDAD/NATIONALITY
NICARAGÜENSE

N° DE CEDULA/IDENTIFICATION N°.
1610408930011S

FECHA DE NACIMIENTO/DATE OF BIRTH
04 AGO/AUG 93

N°. DE REGISTRO/REGISTRY N°.
300420152247

SEXO/SEX
F

LUGAR DE NACIMIENTO/PLACE OF BIRTH
ESTELI NIC

FECHA DE EMISION/DATE OF ISSUE
11 MAYO/MAY 15

FECHA DE VENCIMIENTO/DATE OF EXPIRY
11 MAYO/MAY 25



P<NICURRUTIA<CASTELLON<<MASSIEL<<<<<<<<<<<<<<
C018516630NIC9308042F2505118300420152247<<22

EOIR — 25 of 169

EXHIBIT 2

Declaration of Massiel Urrieta Castellon

**DECLARATION OF MASSIEL URRUTIA CASTELLON**

1. I, Massiel Urrutia Castellon, declare as follows:

2. I am over the age of eighteen years. The facts stated in this declaration are within my own personal knowledge, and if called as a witness I could and would testify competently to them.

3. I am a native and citizen of Nicaragua. I was born on August 4, 1993.

4. I left Nicaragua because I was afraid of being persecuted on account of my political opinion, my religion, and my opposition to the Nicaraguan government.

5. My family and I are devout Catholics. Following the April 2018 insurrection in Nicaragua, my family and I participated in peaceful marches and protests demanding democracy and justice for the people who had been killed and unlawfully imprisoned by the Sandinista government and by paramilitary groups.

6. During that period, many Nicaraguans were killed by the national police and by government supporters. The government's repression fell in particular on the Catholic Church, including bishops, priests, lay leaders, and members of Catholic organizations.

7. My family and I were harassed and intimidated by neighbors, by the national police, and by supporters of the government. My mother received threats from the national police at her workplace. A summons letter was delivered to our family home directing us to appear for interviews because of our participation in the marches and our affiliation with Catholic Church groups. I was never given any hearing on those accusations, and they were never adjudicated.

8. I entered the United States without inspection on or about February 2, 2022. I was apprehended at or near Otay Mesa, California.

9. On February 6, 2022, ICE released me and served me with an Order of Release on Recognizance.

10. I understood from that form that my release depended on my enrolling in and successfully participating in an Alternatives to Detention ("ATD") program, and that if I failed to comply, ICE could redetermine my release conditions or arrest and detain me.

11. I enrolled in ATD and in the BI SmartLINK program, and I accepted and followed every supervision condition ICE imposed on me.

12. I was required to register for BI SmartLINK and to submit a photograph of my face every day for two weeks. After that, I was instructed to appear at the ICE Los Angeles Field Office to verify my address. I did both.

13. I also reported in person whenever I was told to report. At my last appointment, ICE told me that I no longer had to report and that I would have to appear in immigration court instead.

14. I have lived continuously in the interior of the United States since ICE released me in February 2022. I lived openly and at the addresses I reported to ICE and to the immigration court.

15. Between February 2022 and August 2026, no one from ICE ever told me that I had violated any condition of my release. No one ever told me that ICE was reconsidering my release conditions, and no one ever told me that ICE intended to revoke my release.

16. I have never been arrested for or convicted of any crime, in the United States or anywhere else.

17. In immigration court, I applied for asylum, for withholding of removal, and for protection under the Convention Against Torture.

18. On August 30, 2024, I married Kenneth Josue Blandon in Ko Olina, Hawaii. My husband is a United States citizen. He is a California Deputy Sheriff and is currently assigned to the Twin Towers Correctional Facility in Los Angeles, California.

19. On November 29, 2024, my husband filed a Form I-130, Petition for Alien Relative, on my behalf. It was approved.

20. On January 21, 2025, I appeared in immigration court for my individual merits hearing on my applications for asylum, withholding of removal, and protection under the Convention Against Torture. I completed my direct testimony that day. The judge continued the case to May 19, 2025 for cross-examination.

21. I appeared at every hearing in my case before May 19, 2025.

22. I was represented in immigration court by Alan K. Abrams, Esq., a sole practitioner in Century City, California.

23. Several days before the May 19, 2025 hearing, Mr. Abrams telephoned me. He told me that he had been ill. He told me that the court hearing would be cancelled and rescheduled for a later date.

24. I asked Mr. Abrams several times whether I still needed to go to court. He told me clearly: "No, you do not need to attend." I trusted my attorney and I followed his advice.

25. I did not appear in court on May 19, 2025 because my attorney told me not to appear. If Mr. Abrams had told me to go to court that day, I would have gone. I have never intentionally missed a court date or an appointment in my case.

26. I later learned that the Immigration Judge ordered me removed in absentia on May 19, 2025.

27. I later learned that Mr. Abrams filed a motion to reopen on June 18, 2025, supported by his own declaration and medical documentation, but that he did not tell the immigration court that he had instructed me not to appear.

28. I later learned that on July 10, 2025, the Immigration Judge denied that motion, finding that my attorney had documented his own good cause for failing to appear but that the motion did not explain why I had failed to appear.

29. On August 14, 2026, my present counsel filed a Renewed Motion to Reopen and Rescind In Absentia Order of Removal Due to Ineffective Assistance of Counsel, together with a request for a stay of removal. That motion is still pending before the Immigration Judge.

30. After my husband's I-130 petition was approved, I applied for a Form I-601A provisional unlawful presence waiver. USCIS accepted my application, processed it, and scheduled me for biometrics for August 6, 2026 at a USCIS Application Support Center in Los Angeles, California. I went to that appointment, as the Government required me to do.

31. At the appointment, USCIS notified ICE that I was there. ICE officers took me into physical custody at the Application Support Center. I have been detained at the Adelanto ICE Processing Center ever since.

32. I was not hiding from the Government when I was arrested. I was not running away. I was not evading supervision. I was standing inside a Government office, at an appointment the Government itself had scheduled and required me to attend, in order to complete a step in an application the Government was actively processing so that I could seek lawful status.

33. No one ever warned me that I would be taken into custody at that appointment. No one told me to put my affairs in order, to arrange care for my household, or to prepare to be detained for an unknown length of time.

34. Before I was taken into custody, no one told me that my release was being revoked, that I was accused of violating any condition of my release, or that ICE had made any decision about my custody.

35. I was never given any opportunity to explain, to anyone, that I was not a danger to anyone and that I was not going to run away.

36. I was not served with any written notice explaining why my release was being revoked.

37. Between May 19, 2025 and August 6, 2026 — approximately fifteen months — no one from ICE ever contacted me about the in absentia removal order. ICE never told me to report for removal. ICE never changed my supervision conditions and never told me that my release was in question.

38. My detention has been very hard on my husband. He works inside a correctional facility. Paying close and constant attention to what is happening around him is part of how he keeps himself and other people safe. I am afraid for him.

39. My husband has sought medical care and has been diagnosed with Adjustment Disorder with Anxiety affecting his functional impairment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on September 2, 2026, at Adelanto, California.

*s/ Massiel Urrutia Castellon*
MASSIEL URRUTIA CASTELLON
Petitioner

# EXHIBIT 3

Order of Release on Recognizance

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

# ORDER OF RELEASE ON RECOGNIZANCE

File No.: 240 262 057

Name: URRUTIA CASTELLON, MASSIEL Date: February 5, 2022

You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions:

☒ You must report for any hearing or interview as directed by Immigration and Customs Enforcement or the Executive Office for Immigration Review.

☒ You must surrender for removal from the United States if so ordered.

☒ You must report in (writing) (person) to Duty officer at See I-831 on 02/22/2022 10:00 as directed.

If you are allowed to report in writing, the report must contain your name, alien registration number, current address, place of employment, and other pertinent information as required by the officer listed above.

☒ You must not change your place of residence without first securing written permission from the officer listed above.

☒ You must not violate any local, State or Federal laws or ordinances.

☒ You must assist Immigration and Customs Enforcement in obtaining any necessary travel documents.

☒ Other: *Your release is contingent upon your enrollment and successful participation in an Alternatives to Detention (ATD) program as designated by the U.S. Department of Homeland Security. As part of the ATD program, you will be subject to electronic monitoring and may be subject to a curfew. Failure to comply with the requirements of the ATD program will result in a redetermination of your release conditions or your arrest and detention.*

*If fitted with a U.S. Immigration and Customs Enforcement GPS tracking ankle bracelet, do not tamper with or remove the device. Under federal law, it is a crime to willfully damage or attempt to damage property of the United States. Damaging or attempting to damage the GPS tracking ankle bracelet or any of its associated equipment (including, but not limited to, the charging station, batteries, power cords, etc.) may result in your arrest, detention, and prosecution under 18 U.S.C. § 1361 and/or 18 U.S.C. § 641, each punishable by a fine, up to ten years imprisonment, or both.*

☐ See attached sheet containing other specified conditions (Continue on separate sheet if required)

**NOTICE: Failure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by Immigration and Customs Enforcement.**

For. ROLOFF, B 7694
(Name ~~and Title of ICE~~ Official)

**Alien's Acknowledgement of Conditions of Release under an Order of Recognizance**

I hereby acknowledge that I have (read) (had interpreted and explained to me in the Spanish language) the contents of this order, a copy of which has been given to me. I understand that failure to comply with the terms of this order may subject me to a fine, detention, or prosecution.

#5338
(Signature of ICE Official Serving Order) (Signature of Alien)

02/06/2022
Date

I hereby cancel this order of release because:

☐ The alien failed to comply with the conditions of release. ☐ The alien was taken into custody for removal.

(Signature of ICE Official Cancelling Order) Date

ICE Form I-220A (10/20) Page 1 of 5

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## ORDER OF RELEASE ON RECOGNIZANCE
## (CONTINUATION PAGE)

| | | |
|---|---|---|
| Alien Name: URRUTIA CASTELLON, MASSIEL | Picture | Right Index Print |
| File Number: 240 262 057 — Date: February 5, 2022 |  |  |
| Alien's Signature: X [signature] | | |
| Alien's Telephone Number (if any): 3232291990 | | |
| Alien's Address: 757 S NEW HAMPSHIRE APT 205 LOS ANGELES CALIFORNIA 90005 | | |

PERSONAL REPORT RECORD

| Date | Officer | Comment/Changes |
|---|---|---|
| 2-17-22 | | 3-21-22 |
| MAR 21 2022 | solorzano | Next Report Date 9/29/22 @ 8am |
| 9/29/22 | SU | Report 4/12/23 830am |
| | | |

| | |
|---|---|
| Signature: B 9338 Akle BRANDON 9338 Deportation Officer | Title: Deportation Officer |







109-109

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

# ORDER OF RELEASE ON RECOGNIZANCE (ADDENDUM)

File No.: 240 262 057

Name: URRUTIA CASTELLON, MASSIEL

Date: February 5, 2022

☒ That you do not associate with known gang members, criminal associates, or be associated with any such activity.

☐ That you register in a substance abuse program within 14 days and provide ICE with written proof of such within 30 days. The proof must include the name, address, duration, and objectives of the program as well as the name of a counselor.

☐ That you register in a sexual deviancy counseling program within 14 days and provide ICE with written proof of such within 30 days. You must provide ICE with the name of the program, the address of the program, duration and objectives of the program as well as the name of a counselor.

☐ That you register as a sex offender, if applicable, within 7 days of being released, with the appropriate agency(s) and provide ICE with written proof of such within 10 days.

☒ That you do not commit any crimes while on this Order of Release on Recognizance.

☐ That you report to any parole or probation officer as required within 5 business days and provide ICE with written verification of the officer's name, address, telephone number, and reporting requirements.

☐ That you continue to follow any prescribed doctor's orders whether medical or psychological including taking prescribed medication.

☒ That you provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document.

☒ That you provide ICE with written responses from the Embassy or Consulate regarding your request.

☒ Any violation of the above conditions will result in revocation of your employment authorization document.

☒ Any violation of these conditions may result in you being taken into ICE custody and you being criminally prosecuted.

☐ Other:

X ______________ (Signature of Alien)



ICE Form I-220A (10/20)







110-110

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

# ORDER OF RELEASE ON RECOGNIZANCE
# (OUT-PROCESSING CHECKLIST)

**Sex Offenders**

- ☐ Probation/Parole Officer Notified
- ☐ Registered as sex-offender as required by state statute within 7 days
- ☐ Victim/Witness Coordinator Notified
- ☐ Victim/Witness Notified
- ☐ Written Proof of Counseling

**Substance Abusers**

- ☐ Probation/Parole Officer Notified
- ☐ Written Proof of Counseling

**All Aliens**

- ☐ Probation/Parole Officer Notified
- ☐ Obtain address where living and telephone number
- ☐ Enter into IDENT FINS#: 1261860953
- ☐ NCIC Check
- ☐ Travel Document Application
- ☐ Other: ____________________

| Completed By | |
|---|---|
| Deportation Officer: BRANDON 9338 AKLE B 9338 Akle ~~Deportation Officer~~ | Date 02/05/2022 |

| Concurrence By | |
|---|---|
| Supervisory Detention and Deportation Officer: ROLOFF, B 7694 | Date 02/05/2022 |

U.S. Department of Homeland Security

Continuation Page for Form I-220A

| Alien's Name | File Number | Date |
|---|---|---|
| URRUTIA CASTELLON, MASSIEL | 240 262 057<br>Event No: CHU2202000132 | 02/05/2022 |

LOCATION OF ICE OFFICE WHICH YOU REPORT TO
----------------------------------------

300 N. Los Angeles Street, RM B17
Los Angeles, CA 90012
213-830-7999

| Signature | Title |
|---|---|
| BRANDON 9338 AKLE B 9338 Akle Deportation Officer | Deportation Officer |

5 of 5 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

EXHIBIT 4

ATD Enrollment

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## ATD ENROLLMENT - NOTICE TO ALIEN

| Name: | Field Office: | A Number: |
|---|---|---|
| Urrutia-Castellon, Massiel | San Diego | 240 262 057 |

Your release is contingent upon your enrollment and successful participation in an Alternatives to Detention (ATD) program as designated by the U.S. Department of Homeland Security. As part of the ATD program, you will be subject to electronic monitoring and may be subject to a curfew. Failure to comply with the requirements of the ATD program will result in a redetermination of your release conditions or your arrest and detention.

If fitted with a U.S. Immigration and Customs Enforcement GPS monitoring device, do not tamper with or remove the device. Under federal law, it is a crime to willfully damage or attempt to damage property of the United States. **The unauthorized removal of the GPS monitoring device will result in damage to property of the United States.** Damaging or attempting to damage the GPS monitoring device or any of its associated equipment (including, but not limited to, the charging station, batteries, and power cords) may result in your arrest, detention, and prosecution under **18 U.S.C. § 1361** and/or **18 U.S.C. § 641**, each punishable by a fine, up to ten years' imprisonment, or both.

### RECORD OF SERVICE

| Served On: (Alien's Signature) | Date: |
|---|---|
| X [signature] | 02/06/2022 |

*By signing I acknowledge that this form was provided to me in a language I understand or was read to me in a language I understand. I further acknowledge that tampering with, damaging, and/or removing the GPS Device, or any of its associated equipment, without permission may result in damage to federal property for which I may be criminally prosecuted.*

| Served By: (Print Name and Title of Officer) | Location of Service: |
|---|---|
| Brandon A. / DO | USBP-CHU |

| Officer's Signature: | Date: |
|---|---|
| B 9338 Akle<br>Deportation Officer | 02/06/2022 |

ICE Form 71-071 (2/21) Page 1 of 3







106-106

EXHIBIT 5

BI Smart Link

# Programa de Supervisión Intensiva y Comparecencia
## Acuerdo con el Participante de BI SmartLINK S-Site

Los participantes que deban ser monitoreados con verificación de ubicación o de horario de regreso, serán monitoreados por medio de la aplicación BI SmartLINK®.

| ACUERDO | |
|---|---|
| 1. | Yo Urrutia-Castellon, Massie, estoy autorizado(a) a viajar a la 300 N. Los Angeles St. B17 en la cuidad de Los Angeles, CA 90012 dentro de los estados unidos. Estoy acuerdo en llegar a esta ubicación final antes de 02/22/2022. Al llegar a esta ubicación final, ERO-ATD tomara una determinación y siguientes pasos. |
| 2. | Cuando esté en el Programa de Monitoreo Electrónico, me comprometo a llevar conmigo el dispositivo móvil provisto por BI y mantenerlo cargado y encendido en todo momento. |
| 3. | Reconozco que recebe BI Mobile dispositivo número de identificación: |
| 4. | Estoy de acuerdo en que si debo enviar un registro diario como parte de mi programa de supervisión, debo:<br>• Entiendo que recibiré una notificación para enviar ○semanal o ○mensual en Lunes. Registre entre 10:00 - 12:00 y cumplirá completando mi registro según sea necesario.<br>• Entiendo que mi dispositivo móvil permite que la aplicación SmartLink proporcione información sobre mi ubicación.<br>• Reconozco estar en un área de cobertura de datos moviles o conectado a un punto de acceso WIFI con conexión a el internet en el momento de mi registro u otro evento requerido. Si no tengo cobertura en el momento del registro u otro evento, me trasladare a una área de cobertura lo más antes posible. |
| 5. | Entiendo que mi identidad se verifica por medio de tecnología biométrica y me comprometo a no intentar evitar o actuar de ninguna manera tendiente a evitar la fiabilidad de la tecnología biométrica. |
| 6. | Reconozco que es mi responsabilidad informar a ERO inmediatamente si pierdo o daño el dispositivo móvil en el que está instalada la aplicación SmartLINK. |
| 7. | Acuerdo a NO conducir un vehículo u operar maquinaria cuando utilice la aplicación SmartLINK. |
| 8. | Acuerdo NO alterar o descartar el dispositivo móvil de BI. |
| 9. | Comprendo que debo devolver el dispositivo móvil en mi primera visita a ERO o a una oficina de BI ISAP. |

| RECONOCIMIENTO DE REVISIÓN | | | |
|---|---|---|---|
| **Mi firma a continuación reconoce que he recibido una copia de las reglas y el horario autorizado y que me han sido explicados. También reconozco que había servicios de traducción a mi disposición si los solicitaba. Entiendo que debo cumplir con estas reglas hasta que haya completado el Programa de Monitoreo Electrónico, o hasta que sea notificado de lo contrario por mi Especialista de Caso de Supervisión Intensiva. Entiendo que cualquier violación de estas reglas constituirá una infracción que podría ocasionar el cese de mi participación en este programa y mi regreso a detención.** | | | |
| **Nombre del participante:** Urrutia-Castellon, Massie | | | |
| **Número de extranjero:** 240 262 057 | | | |
| **Firma del participante** | [signature] | **Fecha** | 02/06/2022 |
| **Firma del especialista del caso** | Cassandra Joslin | **Fecha** | 02/06/2022 |

EOIR — 115 of 169



113-113

EXHIBIT 6

Notice to Appear

DEPARTMENT OF HOMELAND SECURITY

# NOTICE TO APPEAR

DOB: 08/04/1993

Event No: ADE2311000074

In removal proceedings under section 240 of the Immigration and Nationality Act:

Subject ID: 381039330

File No: 240 262 057

In the Matter of:

Respondent: MASSIEL URRUTIA CASTELLON currently residing at:

5815 E Wardlow Rd. Long Beach ,CALIFORNIA, 90808 (213) 422-7286

(Number, street, city, state and ZIP code) (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of NICARAGUA and a citizen of NICARAGUA;

3. You entered the United States at or near Otay Mesa, CA, on or about February 2, 2022;

4. You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8CFR 208.30 ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

606 South Olive Street, 15 Floor Los Angeles CA 90014.

*(Complete Address of Immigration Court, including Room Number, if any)*

on June 13, 2023 *(Date)* at 8:30 AM *(Time)* to show why you should not be removed from the United States based on the charge(s) set forth above.

G 6830 MONTES - SDDO

*(Signature and Title of Issuing Officer) (Sign in ink)*

Date: November 3, 2022

Adelanto, CA

*(City and State)*

This Notice to Appear Supersedes the Notice to Appear issued on February 4, 2022

EOIR — 1 of 3

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

____________________
*(Signature of Respondent) (Sign in ink)*

Date: __________

____________________
*(Signature and Title of Immigration Officer) (Sign in ink)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on November 3, 2022, in the following manner and in compliance with section 239(a)(1) of the Act.

☐ in person ☐ by certified mail, returned receipt # ______ requested ☒ by regular mail
☐ Attached is a credible fear worksheet.
☒ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the __________ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

____________________
*(Signature of Respondent if Personally Served) (Sign in ink)*

M. 8955 JIMENO - DO [signature]
*(Signature and Title of officer) (Sign in ink)*

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

# EXHIBIT 7

Marriage Certificate

Kenneth Josue Blandon
Massiel Urrutia Castellon
5815 East Wardlow Road
LONG BEACH, California 90808

# CERTIFICATE OF MARRIAGE

STATE OF HAWAI'I
DEPARTMENT OF HEALTH

CERTIFICATE NUMBER
151 2024-011421

| | | |
|---|---|---|
| NAME OF GROOM<br>Kenneth Josue Blandon | DATE OF BIRTH<br>MAY 01, 1989 | GROOM'S PLACE OF BIRTH<br>LONG BEACH, CALIFORNIA |
| GROOM'S DECLARED MIDDLE NAME(S)<br>- | FATHER'S FULL NAME<br>Carlos Jose Blandon | FATHER'S STATE OR COUNTRY OF BIRTH<br>NICARAGUA |
| GROOM'S DECLARED SURNAME<br>Blandon | MOTHER'S MAIDEN NAME<br>Martha Lorena Collado | MOTHER'S STATE OR COUNTRY OF BIRTH<br>NICARAGUA |
| NAME OF BRIDE<br>Massiel Urrutia Castellon | DATE OF BIRTH<br>AUGUST 04, 1993 | BRIDE'S PLACE OF BIRTH<br>ESTELI, NICARAGUA |
| | FATHER'S FULL NAME<br>Jose Francisco Urrutia | FATHER'S STATE OR COUNTRY OF BIRTH<br>NICARAGUA |
| BRIDE'S DECLARED SURNAME<br>Blandon | MOTHER'S MAIDEN NAME<br>Esperanza De Jesus Castellon | MOTHER'S STATE OR COUNTRY OF BIRTH<br>NICARAGUA |
| DATE OF MARRIAGE<br>AUGUST 30, 2024 | PLACE OF CEREMONY<br>SECRET BEACH, KO OLINA | COUNTY<br>HONOLULU    ISLAND<br>OAHU |
| DATE ACCEPTED BY STATE REGISTRAR<br>09/03/2024 | PERFORMER<br>OPUNUI, LINDSAY SUSAN | |

OHSM 5.3 (Rev.2/13) **This copy serves as prima facie evidence of the fact of marriage in any court proceeding.** [HRS 572-13(c), 338-13(b)]

**ANY ALTERATIONS INVALIDATE THIS CERTIFICATE**

# EXHIBIT 8

## I-130 Approval Notice

THE UNITED STATES OF AMERICA

# I-797 | NOTICE OF ACTION

DEPARTMENT OF HOMELAND SECURITY
U.S. CITIZENSHIP AND IMMIGRATION SERVICES

| Receipt Number | | Case Type |
|---|---|---|
| IOE9551223953 | | I130 - PETITION FOR ALIEN RELATIVE |
| **Received Date** 11/29/2024 | **Priority Date** 11/29/2024 | **Petitioner** BLANDON, KENNETH JOSUE |
| **Notice Date** 12/30/2025 | **Page** 1 of 1 | **Beneficiary** A240 262 057 BLANDON, MASSIEL |

BLANDON, KENNETH JOSUE
PO BOX 1371 352 CEDARBROOK DRIVE
TWIN PEAKS CA 92391-1371

**Notice Type:** Approval Notice
Section: Husband or wife of U.S Citizen, 201(b) INA

The above petition has been approved. As the petitioner requests, we have sent the petition to the U.S. Department of State National Visa Center (NVC), 32 Rochester Avenue, Portsmouth, NH 03801-2909. The NVC processes all approved immigrant visa petitions that need consular action, including the collection of necessary forms and documents. It also determines which consular post is appropriate to complete visa processing. The NVC will then transfer the approved petition to the consular post once processing has been completed and an interview has been scheduled at the Embassy or Consulate.

The NVC will contact the beneficiary of this petition with further information about immigrant visa processing steps.

You should allow a minimum of 45 days for U.S. Department of State processing before contacting the NVC. If you have not received any correspondence from NVC within 45 days, you may contact the NVC at https://nvc.state.gov/inquiry.

For more information about NVC processing, please visit https://nvc.state.gov.

**THIS NOTICE IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

**NOTICE:** Although this application or petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

SCOPS TEXAS FACILITY
U.S. CITIZENSHIP & IMMIGRATION SVC
6046 N BELT LINE RD.
IRVING TX 75038-0001
**USCIS Contact Center: www.uscis.gov/contactcenter**

FORM I-797 [REV. 08/01/16]

EOIR 15 of 27

# EXHIBIT 9

## I-601A Receipt Notice and Biometrics Appointment

Uploaded on: 08/14/2026 at 05:57:58 PM (Eastern Daylight Time) Base City:

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

**THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.**

| ASC Appointment Notice | CASE TYPE<br>I601A - PROVISIONAL UNLAWFUL PRESENCE WAIVER | | NOTICE DATE<br>07/17/2026 |
|---|---|---|---|
| APPLICATION/PETITION/REQUEST NUMBER<br>YSC2690037372 | | USCIS A#<br>A240 262 057 | CODE<br>3 |
| ACCOUNT NUMBER | TCR | SERVICE CENTER<br>YSC | PAGE<br>1 of 2 |

MASSIEL BLANDON
c/o ALAN K ABRAMS
1875 CENTURY PARK EAST STE 2250
CENTURY CITY CA 90067

**READ THIS ENTIRE NOTICE CAREFULLY.** To process your application, petition, or request, U.S. Citizenship and Immigration Services (USCIS) must collect your biometrics. Please appear at the Application Support Center (ASC) at the date and time specified. **TO REQUEST THAT USCIS RESCHEDULE YOUR APPOINTMENT, SEE THE INSTRUCTIONS AT THE BOTTOM OF THIS NOTICE. IF YOU FAIL TO APPEAR AS SCHEDULED, USCIS WILL CONSIDER YOUR BENEFIT REQUEST ABANDONED AND IT MAY BE DENIED.**

| APPLICATION SUPPORT CENTER | DATE AND TIME OF APPOINTMENT |
|---|---|
| USCIS LA BREA<br>3747 South LaBrea Ave<br>Los Angeles CA 90016 | 08/06/2026<br>02:00PM |

**WHEN YOU APPEAR AT THE ASC FOR BIOMETRICS SUBMISSION, YOU MUST BRING:**

1. **THIS APPOINTMENT NOTICE.** If you received multiple ASC notices, bring **all** notices to your first appointment, and
2. **PHOTO IDENTIFICATION.** You must bring a valid government-issued photo identification. If the name on your identification is different than the name on your ASC notice, bring supporting documents. If you filed an Application for Naturalization (Form N-400) or Application to Replace Permanent Resident Card (Form I-90), you must bring your Permanent Resident Card (also known as a Green Card).

If you are sick, do not visit a USCIS office, follow the instructions on this notice to reschedule your appointment. If you have injuries that may interfere with your biometrics submission, USCIS may reschedule your appointment.

Cell phones or electronic devices must be turned off during biometrics submission. No one may photograph or record at an ASC.

For more information regarding your ASC appointment, visit https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment.

**NOTE:** If an ASC closes due to weather or other reasons, USCIS will automatically reschedule your appointment for the next available date and time and you will receive a new ASC appointment notice. For the latest information on the status of an office, visit https://www.uscis.gov/about-us/uscis-office-closings. Please check this page on the day of your appointment.

You must update your address if you move. For instructions, visit https://www.uscis.gov/addresschange.

USCIS may use your biometrics to check the criminal history records of the FBI, for identity verification, to determine eligibility, to create immigration documents (e.g., Green Card, Employment Authorization Document, etc.), or for any purpose authorized by the Immigration and Nationality Act.

You may obtain a copy of your FBI record using the procedures outlined in 28 C.F.R. 16.32. Visit: https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/identity-history-summary-checks for more information. For Privacy Act information, please visit https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/compact-council/privacy-act-statement.

If you cannot attend your scheduled appointment, you may request to reschedule at https://my.uscis.gov/accounts/biometrics/overview or by calling the USCIS Contact Center at 1-800-375-5283 (TTY 800-767-1833). You must make your request before the date and time of the original appointment, and you must establish good cause for rescheduling. If you fail to make a request before your scheduled appointment or fail to establish good cause, and you do not appear at your appointment, USCIS may consider your application, petition, or request abandoned and, as a result, it may be denied. For more information about rescheduling, see https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment.

If you cannot leave your home/hospital due to a serious ongoing medical condition, you may request a mobile biometrics appointment by following the instructions on the back of this notice under "Notice for People with Disabilities," or by visiting uscis.gov/accommodationsinfo.

**If you have any questions regarding this notice, please contact the USCIS Contact Center at 1-800-375-5283.**

EOIR 16 of 27

**If this is an interview or biometrics appointment notice, please see the back of this notice for important information.**



Form I-797C 10/13/21

EXHIBIT 10

Medical Record of Attorney

David S. Ramin, MD
*Diplomate American Board of Internal Medicine*

9025 Wilshire Blvd., Suite 210
Beverly Hills, CA 90211

Tel: (310) 276-7575
Fax: (310) 829-1440

To whom it may concern:

06/04/2025

**RE: ALAN ABRAMS**

He is under my care, he has spontaneous subarachnoid hemorrhage, and we are controlling his blood pressure. He is not to be in court for the next 6 months as he can have a CNS event. If you have any questions or concerns please feel free to contact me. (310) 276 7575.

Best regards,

David Ramin M.D.
Diplomate American Board of Internal Medicine
Former Chief of Medicine Brotman Medical Center
Assistant Clinical Professor of Medicine KECK USC School of Medicine

EXHIBIT 11

First Motion to Reopen

Alan K Abrams Esq.
Abrams & Taheri, LLP
1875 Century Park East Suite 2250
Century City CA, 90067
(310) 894-8000

**NON- DETAINED**

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE OF IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**LOS ANGELES, CALIFORNIA**

| | |
|---|---|
| In the Matter of:<br><br>**URRUTIA CASTELLON, MASSIEL**<br>In Removal Proceedings | File No.: A 240262057 |

Hon. Immigration Judge. Miller Next Hearing:

**RESPONDENT'S MOTION TO REOPEN IN ABSENTIA REMOVAL ORDER**

**PURSUANT TO 8 C.F.R. § 1003.23(b)(4)(ii)**

Pursuant to 8 C.F.R. § 1003.23(b)(4)(ii), Respondent respectfully moves to reopen the in-absentia removal order issued on **May 19, 2025**, on the grounds that Respondent's counsel was unable to appear due to serious medical illness—an exceptional circumstance as defined under **INA § 240(e)(1)**. Additionally, under **8 C.F.R. § 1003.29,** Respondent notes that the absence was not due to willful failure to appear, but to circumstances beyond control, and respectfully requests the Court exercise discretion in granting this motion.

Respondent was served with a Notice to Appear on January 22, 2025, charging removability under INA § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i). Proceedings are conducted pursuant to INA § 240 (8 U.S.C. § 1229a). Respondent is seeking relief in the form of asylum under INA § 208 (8 U.S.C. § 1158), withholding of removal under INA § 241(b)(3), and protection under the Convention Against Torture pursuant to 8 C.F.R. §§ 1208.16–1208.18. Respondent fled Nicaragua due to fear of persecution based on her political opinion, religious background and opposition to the Nicaraguan government.

Respondent was scheduled to appear remotely before the Immigration Court in Los Angeles California, on May 19, 2025.

On that date, Respondent's counsel in the aftermath of brain hemorrhage suffered on April 25, 2025 that necessitated his hospitalization, three medical procedures and draining of the blood from his brain. He was then ordered to undergo recovery after he was stabilized, medicate for hypertension, severe headache, anxiety and weakness. His condition was complicated due to ongoing prostate issues that might require surgery.  Respondent's counsel is still not cleared to work.

As a result, Respondent was unrepresented and unable to proceed with the merits hearing and has failed to respond to Respondent's calls concerning the hearing. Respondent respectfully submits

this statement in support of the Motion to Reopen the in-absentia removal order issued on **May 19, 2025** on the basis of **exceptional circumstances** pursuant to **INA § 240(e)(1)** and **8 C.F.R. § 1003.23(b)(4)(ii)(A).**

On April 25, 2025, Respondent's legal counsel, **Alan K Abrams**, experienced an unexpected and serious medical emergency—specifically, a brain hemorrhage—and was rushed to the emergency room for immediate treatment. Counsel was immediately hospitalized and received continuous medical care. He was released from the hospital prior to the hearing as soon as his condition stabilized. However, he was instructed to self-treat for thirty days following the release. He was instructed not to drive. As of the time of the release from hospital and to date, the counsel has and continues to suffer from severe headaches, anxiety, physical weakness, high blood pressure and elevated PSA that might require a prostate surgery. He has not been cleared to resume work.

Counsel is a sole practitioner, with no associates or office staff to monitor court communications or notify the Immigration Court of his condition. Due to the sudden nature of the emergency and the absence of support personnel, counsel was unable to notify the Court of his medical crisis or request a continuance in advance of the hearing.

Upon discharge, counsel's treating physician advised that he not return to work until the end of August 2025, given the seriousness of the medical event and the need for continued neurological monitoring and rest. The physical treating his high blood pressure that has originally caused the brain bleed has advised him not to be exposed to any stressful situation for six months. Medical

documentation from the treating physician, including a letter advising medical leave and outlining the diagnosis and treatment, is attached as **Exhibit B**.

This unfortunate and unforeseeable medical emergency made it impossible for counsel to appear at the hearing or take any immediate remedial action, and thus qualifies as an exceptional circumstance under the relevant legal standard. This condition also prevented him from notifying the client as to the proper course of action on May 19, 2025.

Respondent therefore respectfully requests that the Immigration Court find that the failure to appear was not the result of a willful act or neglect, but was due to circumstances entirely beyond the control of both Respondent and counsel, and that the motion to reopen be granted pursuant to **8 C.F.R. § 1003.23(b)(4)(ii)(A)**. Counsel's medical condition rendered them physically unable to appear at the scheduled hearing and prevented effective communication with Respondent during the critical time period surrounding the hearing.

Under **INA § 240(e)(1)**, "exceptional circumstances" include "serious illness of the alien or the alien's spouse, child, or parent," and courts have consistently interpreted this provision to encompass the **serious illness of a legal representative** that prevents them from attending a hearing. The illness in this case was unexpected, medically documented, and beyond the control of both counsel and Respondent.

Attached as **Exhibit A** is a sworn affidavit from counsel describing the nature of the illness and its impact on their ability to appear in court. **Exhibit B** contains supporting medical documentation. **Exhibit C** is copy of the Notice to Appear and Hearing Notice.

Accordingly, Respondent respectfully requests that the Immigration Court find that the failure to appear was caused by exceptional circumstances and grant the motion to reopen the in-absentia removal order pursuant to **8 C.F.R. § 1003.23(b)(4)(ii)(A).**

Attached to this motion are the following exhibits:

- Exhibit A: Affidavit from Respondent's Counsel
- Exhibit B: Medical documentation confirming illness
- Exhibit C: Copy of the Notice to Appear and Hearing Notice

Respondent has acted with diligence and respect for the Court's procedures and is pursuing this motion within the 180-day deadline established by regulation. A reasonable continuance, in this case, would comport with due process as it is legally impossible to adequately prepare for a full and fair hearing of the case. These grounds constitute "good cause", in accordance with 8 C.F.R. § 1003.29. The granting of the request hereto would prejudice none of the parties.

Accordingly, on behalf of the respondents, counsel respectfully requests that the Motion be granted and the proceeding be continued and that a hearing date be set in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 10, 2025, in Century City California.

Respectfully submitted,

06-18-2025
Date

Alan K Abrams
Attorney for Respondent

# EXHIBIT A

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE OF IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**LOS ANGELES, CALIFORNIA**

| | | |
|---|---|---|
| In the Matter of:<br><br>**URRUTIA CASTELLON, MASSIEL**<br>In Removal Proceedings | ) | File No.: A 240262057<br><br>AFFIDAVIT OF ALAN K. ABRAMS |

I, Alan K. Abrams,

I, Alan K. Abrams, declare as follows:

1. I am an attorney admitted to practice law before all the courts of the State of California and the Federal Court. I have personal knowledge of the following facts unless otherwise indicated, and would testify to those facts if called upon to do so. I am the attorney of record for Respondent, Urrutia Castellon Massiel.

2. I make this declaration in connection with the Respondent's Motion to Reopen in Absentia Removal Order Pursuant to 8 C.F.R. § 1003.23(b)(4)(ii).

3. As of August 2022, I have suffered from various illnesses. Some of these illnesses have worsened over the years. I have been suffering from serious herniated discs that affected my ability to even walk at times. Some medication I took in response have seriously affected my vision. On March 19th and April 2nd, 2025, I had to undergo eye surgeries. As of 2003 I have had serious prostate issues and am under constant monitoring in fear of prostate cancer.

4. I have also been diagnosed with high blood pressure since 2023. In an annual checkup in March 2025, I was advised my blood pressure problem has worsened.

5. On April 25, 2025 I experienced severe headache. I was rushed to UCLA hospital and undergone examination. I was diagnosed with brain hemorrhage and was immediately hospitalized at the ICU. I have undergone three angiograms and the physicians started immediately draining the blood out through lumbar drain. The process took 15 days as the blood container was placed next to me. I experienced severe headache, lost 15 lbs. and underwent procedures (some were not handled correctly and causing more pain). My condition was stabilized on May 9th, 2025. After I got stabilized, Dr. Anothny Wang, my neurosurgeon has advised me that I would be experiencing severe headache at least for sixty more days and advised me to reset at home while continue to taking various medicine.

**6.** After my release my condition has worsened. I continued to suffer from severe headache, anxiety, weakness without limited ability to move, high blood pressure. On or about May 15, 2025, I visited Dr. David Ramin, MD to start treating the high blood pressure. I have seen him two more time since to monitor the condition. On May 29, 205 I also visited a neurologist named Dr. Pirastehfar to continue my neurology treatments. I also continued to receive treatments from UCLA hospital.

7. As of the time of the hearing in this matter on May 19, 2025, I was not coherent, I was in pain and was moving with the assistance of my wife. Due to my severe headaches and weakness, I was not able to operate. The Respondent has in fact left a message for me at the office voice message on May 16, 2025. I did not retrieve the message until the afternoon hours of May 19, 2025. I was simply not fit or capable to operate and manage my own life or work.

8. As a result of this serious illness, I missed the hearing on May 19, 2025. I have caused some one to call the office but that was too late.

9. As of now, I continue to receive treatments from various physicians, but I continue to have symptoms. It is very difficult for me to operate. I get tired within minutes and I need to sleep to recover. I have another appointment on July 24 with another neurologist.

10. For twenty-five years, I have never missed a hearing and I have been an outstanding officer of the Court. I apologize for missing the hearing and wasting the court's resources. However, regrettably, the circumstances were beyond my control.

11. I plea to court to reopen the case to allow my client to appear in Court. In the hearing preceding the May 19, 2025 hearing, my client has completed her presentation. The hearing was continued at time based on government counsel's request so she could get prepared for her presentation. My client has not done anything to continue the proceeding.

I declare under penalty of perjury under the federal law that the foregoing is true and correct.

DATED: June 10, 2025

Alan Abrams, Declarant

# EXHIBIT B

UCLA Health

**Westwood Neurosurgery**
300 STEIN PLAZA
SUITE 420
LOS ANGELES CA 90095
Phone: 310-825-5111
Fax: 310-825-9385

May 27, 2025

Patient: **Alan Abrams**
Date of Visit: **5/27/2025**

To Whom It May Concern:

This letter is in regard to Alan Abrams, who was evaluated and treated at Ronald Reagan UCLA Medical Center from 04/25/2025 through 05/07/2025. He continues to receive ongoing care and follow up for his diagnosis.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Jennifer P. Isorena, NP

CC:
No Recipients

David S. Ramin, MD
*Diplomate American Board of Internal Medicine*

9025 Wilshire Blvd., Suite 210
Beverly Hills, CA 90211

Tel: (310) 276-7575
Fax: (310) 829-1440

To whom it may concern:

06/04/2025

**RE: ALAN ABRAMS**

He is under my care, he has spontaneous subarachnoid hemorrhage, and we are controlling his blood pressure. He is not to be in court for the next 6 months as he can have a CNS event. If you have any questions or concerns please feel free to contact me. (310) 276 7575.

Best regards,

David Ramin M.D.
Diplomate American Board of Internal Medicine
Former Chief of Medicine Brotman Medical Center
Assistant Clinical Professor of Medicine KECK USC School of Medicine

5:06

Back Past Visit Close

## Emergency Department

Friday April 25, 2025

Ronald Reagan UCLA Medical Center - Radiology
757 Westwood Plaza
Los Angeles CA 90095
310-301-6800

### Directions for Ronald Reagan UCLA Medical Center - Radiology

Valet Parking is available at the main entrance, and rates are posted.
OUTPATIENT STUDIES WITHOUT SEDATION: Please check in at Radiology Suite 1501, First Floor.
OUTPATIENT STUDIES/PROCEDURES WITH SEDATION: Please check in at Admissions Suite 1314, First Floor. (Procedure Treatment Unit (PTU) and Post Anesthetic Care Unit (PACU) check in is Suite 1314)
Please remember to bring your insurance card, picture ID and co-pay for check in and allow time for traffic and parking.
To promote physical distancing, we may ask anyone other than the patient to wait outside until there is room in the waiting area. If you need a guest for physical or language support, please let our front desk know.
Children must have adult supervision and may not be left alone in waiting areas. Children are not permitted inside exam

5:09

Back A Test Details Close

# CT BRAIN WO CONTRAST

Results

## Results

CT code brain wo contrast (Order 773603840)
CT cervical spine wo contrast (Order 773603842)

### Order-Level Documents

No scanned documents

### 4/25/2025 12:53 PM

Narrative & Impression

CT CODE BRAIN WO CONTRAST, CT CERVICAL SPINE WO CONTRAST

HISTORY: AMS r/o ICH

COMPARISON: None available.

TECHNIQUE: Multiplanar noncontrast CT scans of the brain and cervical spine.

Estimated Radiation Dose: The patient received the following exposure event(s) during this study, and the dose reference values for each are as shown (CTDIvol in mGy, DLP in mGy-cm). Note that the values are not patient dose but numbers generated from
scan acquisition factors based on 32 cm (L) and/or 16 cm (S) phantoms and may substantially under-estimate or over-estimate actual patient dose based on patient size and other factors. Brain, CTDI(S): 53.7, DLP: 1231.6;C Spine, CTDI(L): 28, DLP: 782.2.
The following accession numbers are related to this dose report 55132727,55132732

FINDINGS:

5:12

Back A Test Details Close

COMPARISON: Prior IR Cerebral angiogram dated 4/25/2025

REFERRING PHYSICIAN: ANTHONY C. WANG

INTERVENTIONAL NEURORADIOLOGISTS: SATOSHI TATESHIMA and Keiko Fukuda, MD

ANESTHESIA: I was personally responsible for the administration of moderate sedation services during the procedure performed and I confirm requirements described in CPT section on moderate sedation were followed, including the use of an independent
trained observer who had no other duties during the procedure. The drug(s) utilized were fentanyl and versed (see nursing log for details). The total face-to-face time was 60 minutes.

VESSELS SELECTED:
Super Selection and Angiogram: Left Common Carotid Artery, cranial projection (AP and Lateral)
Super Selection and Angiogram: Left Common Carotid Artery, 3-D projection
Super Selection and Angiogram: Right Common Carotid Artery, cranial projection (AP and Lateral)
Super Selection and Angiogram: Right Common Carotid Artery, 3-D projection
Super Selection and Angiogram: Right Vertebral Artery, cranial projection (AP and Lateral)
Super Selection and Angiogram: Right vertebral artery, 3-D and XPER CT projections:

Informed consent was obtained from the patient by Dr. Fukuda. Relevant risks discussed included infection, bleeding, vascular injury, stroke, the need for emergent surgery, coma, and death. Also discussed were contrast-related complications, including
allergic reactions and renal failure. Possible complications relating to sedation were also discussed.

5:11 96

Back A Test Details Close

# CT BRAIN WO CONTRAST

Results

## Results

CT brain wo contrast (Order 773907496)

### Order-Level Documents

No scanned documents

### 4/27/2025 9:14 AM

Narrative & Impression

CT BRAIN WO CONTRAST

HISTORY: "SDH stability scan"

COMPARISON: CT brain on 4/25/2025

TECHNIQUE: Multiplanar CT scan of the brain performed without intravenous contrast.

Estimated Radiation Dose: The patient received the following exposure event(s) during this study, and the dose reference values for each are as shown (CTDIvol in mGy, DLP in mGy-cm). Note that the values are not patient dose but numbers generated from
scan acquisition factors based on 32 cm (L) and/or 16 cm (S) phantoms and may substantially under-estimate or over-estimate actual patient dose based on patient size and other factors. Brain, CTDI(S): 49.5, DLP: 1198.8

FINDINGS/IMPRESSION:

1. Decreased bilateral cerebral subarachnoid hemorrhage with residual in the ventral basal cisterns. Stable mass effect on the ventral pons.

5:11

Back A Test Details ⋮ Close

cm). Note that the values are not patient dose but numbers generated from
scan acquisition factors based on 32 cm (L) and/or 16 cm (S) phantoms and may substantially under-estimate or over-estimate actual patient dose based on patient size and other factors. Brain, CTDI(S): 49.5, DLP: 1198.8

FINDINGS/IMPRESSION:

1. Decreased bilateral cerebral subarachnoid hemorrhage with residual in the ventral basal cisterns. Stable mass effect on the ventral pons.
2. Stable trace subdural blood along the falx and bilateral tentorium, accounting for resolution of retained contrast from angiogram on the prior exam.
3. Decreased ventricular caliber with bifrontal horn diameter measuring 35 mm, previously 38 mm.
4. No new/progressive intracranial hemorrhage or mass effect.

I, Jay Acharya, MD, have reviewed this study and agree with the report above.

Dictated by: Sara Yang 4/27/2025 9:06 AM

Signed by: Jay Acharya 4/27/2025 9:12 AM

## Lab and Collection

CT brain wo contrast - 4/27/2025

## Result History

CT brain wo contrast on 4/27/2025 - Result Edited

## Linked Images

Show images for CT brain wo contrast

## Encounter-Level Documents:

There are no encounter-level documents.

5:12

Back A Test Details ⋮ Close

# IR Angiogram Cerebral

Results

## Results

IR cerebral angiogram (Order 774975025)

### Order-Level Documents

No scanned documents

### 5/5/2025 3:04 PM

Narrative & Impression

CEREBRAL ANGIOGRAM

NAME: ALAN ABRAMS
MEDICAL RECORD NUMBER: 6867493
ACCESSION NUMBER: 55183200
ORDER DATE: 5/2/2025 12:00 AM
DATE OF SERVICE: 5/2/2025 12:00 AM

HISTORY:ALAN ABRAMS is a 58 years Male with a history of hypertension who presented with severe thunderclap headache. CT head revealed subarachnoid hemorrhage within the basal cisterns. CTA and initial cerebral angiogram were negative for aneurysms. He
now presents for diagnostic cerebral angiogram for further evaluation.

COMPARISON: No prior angiograms available for comparison

COMPARISON: Prior IR Cerebral angiogram dated 4/25/2025

REFERRING PHYSICIAN: ANTHONY C. WANG

INTERVENTIONAL NEURORADIOLOGISTS: SATOSHI

5:13

Back A Test Details ⋮ Close

FINDINGS:

Right vertebral Artery, cranial projection (AP and lateral, magnified obliques):
Again seen are the bilateral AICA-PICA complexes. The superior cerebellar and posterior cerebral arteries are overall unremarkable. There is mild narrowing of the right P1 segment and proximal superior cerebellar artery segments. The previously seen
saccular structure is not appreciated on the transfacial projection. The anterior spinal artery is visualized arising primarily from the distal right V4 segment. The basilar perforators are well-visualized on the right anterior oblique projections
without evidence of microaneurysm. There is a small loop of likely the tonsillar branch of the left posterior inferior cerebellar artery adjacent to the mid basilar artery seen on the left anterior oblique projection, which corresponds with the
previously seen structure concerning for a microaneurysm.

Super Selection and Angiogram: Right vertebral artery, 3-D and XPER CT projections:
There is no convincing evidence for an aneurysm or other vascular malformation.

Right vertebral Artery, cranial projection (AP and lateral, magnified obliques):
There is a small loop of likely the tonsillar branch of the left posterior inferior cerebellar artery adjacent to the mid basilar artery seen on the left anterior oblique projection, which corresponds with the previously seen structure concerning for a
microaneurysm. This branch does not arise from the basilar trunk. There is no evidence of contrast stasis within this vessel.

Diagnostic Angiogram eCRF
Exam date:5/5/2025 12:00 AM

5:09

Back A Test Details Close

The following accession numbers are related to this dose report 55132727,55132732

FINDINGS:

CT BRAIN:

Subarachnoid hemorrhage within the basal cisterns predominantly with interpedicular cistern, prepontine cistern, premedullary cisterns. No evidence of mass effect of midline shift. Preserved gray-white matter differentiation. Lateral and third ventricles
are mildly prominent.

No acute skull fracture. Clear sinuses and mastoids.

CT CERVICAL SPINE: Nonspecific straightened cervical lordosis. Vertebral body heights and alignment are within normal limits. No evidence of acute fracture. Multilevel degenerative endplate changes with mild height loss at C5-6 and C6-7. Degenerative
anterior protruding osteophytes most pronounced at C5-6 and C6-7 which may relate to dysphagia. Mild facet arthropathy of the right C4-5 level. There is severe left neural foraminal narrowing at the C6-7 level secondary to uncovertebral spurring and disc
osteophyte complex. No significant prevertebral soft tissue edema.

IMPRESSION:

CT BRAIN:
Subarachnoid hemorrhage within the basal cisterns extending to the ventral foramen magnum. Query underlying aneurysm rupture.

Prominence of the lateral and third ventricles, which raises suspicion for developing hydrocephalus. Follow-up is recommended.

5:13

Back A Test Details ⋮ Close

IR cerebral angiogram (Order 775396529)

Order-Level Documents

No scanned documents

5/6/2025 5:51 PM

Narrative & Impression

CEREBRAL ANGIOGRAM

NAME: ALAN ABRAMS
MEDICAL RECORD NUMBER: 6867493
ACCESSION NUMBER: 55188686
ORDER DATE: 5/5/2025 12:00 AM
DATE OF SERVICE: 5/5/2025 12:00 AM

HISTORY:ALAN ABRAMS is a 58 years Male with a history of hypertension who presented with severe thunderclap headache. CT head revealed subarachnoid hemorrhage within the basal cisterns. CTA and initial cerebral angiogram were negative for aneurysms.
Repeat DSA on 5/2/2025 demonstrated a possible basilar perforator microaneurysm. He now presents for repeat diagnostic cerebral angiogram under anesthesia for further evaluation.

COMPARISON: Prior IR cerebral angiograms dated 4/25/2025 and 5/2/2025

REFERRING PHYSICIAN: ANTHONY C. WANG

INTERVENTIONAL NEURORADIOLOGISTS: May Nour and Keiko Fukuda, MD

ANESTHESIA: General anesthesia was provided by the anesthesiology team.

VESSELS SELECTED:
Right Radial Artery

5:13 96

Back A Test Details ⋮ Close

VESSELS SELECTED:
Right Radial Artery
Super Selection and Angiogram: Right vertebral Artery, cranial projection (AP and Lateral, magnified obliques)
Super Selection and Angiogram: Right vertebral artery, 3-D and Xper CT projections
Super Selection and Angiogram: Right vertebral Artery, cranial projection (magnified obliques)

Informed consent was obtained from the patient by Dr. Nour. Relevant risks discussed included infection, bleeding, vascular injury, stroke, the need for emergent surgery, coma, and death. Also discussed were contrast-related complications, including
allergic reactions and renal failure. Possible complications relating to sedation were also discussed.

The access site was prepped and draped in sterile fashion. The patient was placed on the fluoroscopy table in the supine position with the right arm positioned in the arm holder with the wrist extended. The access site was prepped and draped in sterile
fashion. Real-time ultrasound guidance was used to identify the radial artery, access the artery and confirm patency. Images were stored to the PACS as part of the permanent medical record. 1% lidocaine was injected subcutaneously at the right wrist area
and the right radial artery was then entered with a 21G needle under ultrasound-guidance. Once unobstructed blood "flashback" was seen, a 0.021" guidewire was threaded and the needle was removed over the wire. Next, a 5-French slim sheath was then
inserted over the 0.021" micropuncture guidewire. A Tegaderm dressing was placed over the sheath to keep it in place. Blood was then drawn back to fill a 10 cc syringe containing a cocktail of 2500u heparin, 2.5mg Verapamil and 100mcg nitroglycerin,
which was injected through the sheath to keep the radial artery patent. Next, a right radial angiogram was performed.

5:07

< Back my UCLA health | MyChart by Epic

A Appointments

# CT BRAIN WO CONTRAST

Tuesday, June 24, 2025

Arrive by 8:25 AM
Starts at 8:40 AM

Cancel Appt

Add to Calendar

100 UCLA Medical Plaza - Radiology

100 Medical Plaza Suite 100 Los Angeles CA 90095

Map

310-301-6800

Call

Parking is available underground via the Medical Plaza main entrance, or
from Gayley Avenue to the Medical Plaza Parking Lot. Rates are posted....

Show More

Get Ready

## Review Instructions

Please note that your ARRIVAL time is 8:25 AM PDT, as you have to prepare for the study.

The appointment time is for the start of the study.

Contact Radiology Scheduling (310) 301-6800 for questions
Please wear loose, comfortable clothing without metal

# EXHIBIT C

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
LOS ANGELES IMMIGRATION COURT

LEAD FILE: 240-262-057
IN REMOVAL PROCEEDINGS
DATE: Jan 22, 2025

TO: Abrams& TAHERI llp
Abrams, Alan K
1875 century park e 1025
Century city, CA 90067

RE: 240-262-057 URRUTIA CASTELLON, MASSIEL

**Notice of Internet-Based Hearing**

Your case has been scheduled for a INDIVIDUAL hearing before the immigration court on:

Your hearing is not in person. You will access your hearing by using the web page below.
URL: https://eoir.webex.com/meet/IJ.Miller

Date: May 19, 2025
Time: 08:30 A.M. PT
Court Address: 300 N. LOS ANGELES ST. RM 4330, LOS ANGELES, CA 90012

**Representation**: You may be represented in these proceedings, at no expense to the Government, by an attorney or other representative of your choice who is authorized and qualified to represent persons before an immigration court. If you are represented, your attorney or representative must also appear at your hearing and be ready to proceed with your case. Enclosed and online at https://www.justice.gov/eoir/list-pro-bono-legal-service-providers is a list of free legal service providers who may be able to assist you.

**Failure to Appear**: If you fail to appear at your hearing and the Department of Homeland Security establishes by clear, unequivocal, and convincing evidence that written notice of your hearing was provided and that you are removable, you will be ordered removed from the United States. Exceptions to these rules are only for exceptional circumstances.

**Change of Address**: The court will send all correspondence, including hearing notices, to you based on the most recent contact information you have provided, and your immigration proceedings can go forward in your absence if you do not appear before the court. If your contact information is missing or is incorrect on the Notice to Appear, you must provide the immigration court with your updated contact information within five days of receipt of that notice so you do not miss important information. Each time your address, telephone number, or email address changes, you must inform the immigration court within five days. To update your contact information with the immigration court, you must complete a Form EOIR-33 either online at https://respondentaccess.eoir.justice.gov/en/ or by completing the enclosed paper form and mailing it to the immigration court listed above.

**Internet-Based Hearings:** If you are scheduled to have an internet-based hearing, you will appear by video or telephone. If you prefer to appear in person at the immigration court named above, you must file a motion for an in-person hearing with the immigration court at least fifteen days before the hearing date provided above. Additional information about internet-based hearings for each immigration court is available on EOIR's website at https://www.justice.gov/eoir/eoir-immigration-court-listing.

**In-Person Hearings:** If you are scheduled to have an in-person hearing, you will appear in person at the immigration court named above. If you prefer to appear remotely, you must file a motion for an internet-based hearing with the immigration court at least fifteen days before the hearing date provided above.

For information about your case, please call **1-800-898-7180** (toll-free) or **304-625-2050**.

**The Certificate of Service on this document allows the immigration court to record delivery of this notice to you and to the Department of Homeland Security.**

---

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY:MAIL[M] PERSONAL SERVICE[P] ELECTRONIC SERVICE[E]
TO: [ ] Noncitizen | [ ] Noncitizen c/o Custodial Officer |
[ E ] Noncitizen ATT/REP | [ E ] DHS
DATE: _1/22/25________ BY: COURT STAFF ___M.Berumen_________________
Attachments:[ ] EOIR-33 [ ] Appeal Packet [ ] Legal Services List [ ] Other NH

Use a smartphone's camera to scan the code on this page to read the notice online.

Usa la cámara de un teléfono inteligente para escanear el código de esta página y leer el aviso en línea.

Use a câmara do smartphone para digitalizar o código nesta página e ler o manual de instruções online.

使用智能手机摄像头扫描本页面的代码・即可在线阅读该通知・

ਨੋਟਿਸ ਨੂੰ ਔਨਲਾਈਨ ਪੜ੍ਹਨ ਲਈ ਇਸ ਪੰਨੇ 'ਤੇ ਕੋਡ ਨੂੰ ਸਕੈਨ ਕਰਨ ਲਈ ਸਮਾਰਟਫੋਨ ਦੇ ਕੈਮਰੇ ਦੀ ਵਰਤੋਂ ਕਰੋ।

অনলাইনে নোটিশ পড়ার জন্য এই পেজের কোডটি স্ক্যান করতে স্মার্টফোনের ক্যামেরা ব্যবহার করুন

सूचना अनलाइनमा पढ्न यस पृष्ठमा कोड स्क्यान गर्न स्मार्टफोनको क्यामेरा प्रयोग गर्नुहोस्।

Sèvi ak kamera yon telefòn entèlijan pou eskane kòd ki nan paj sa a pou li avi a sou entènèt.

استخدم كاميرا الهاتف الذكي لمسح الرمز الموجود في هذه الصفحة لقراءة الإشعار على الإنترنت

Чтобы прочитать уведомление онлайн, отсканируйте код на этой странице с помощью камеры вашего смартфона.

Utilisez l'appareil photo d'un téléphone intelligent pour scanner le code sur cette page afin de lire l'avis en ligne.

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE OF IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**LOS ANGELES, CALIFORNIA**

| | |
|---|---|
| In the Matter of:<br><br>**URRUTIA CASTELLON, MASSIEL**<br>In Removal Proceedings | File No.: A 240262057 |

ORDER OF THE IMMIGRATION JUDGE

Upon consideration of Respondent's **Motion to Reopen the In Absentia Removal Order,** it is HEREBY ORDERED that the motion be

**GRANTED** _____ **DENIED** _____ because

- o DHS does not oppose the motion
- o The respondent does not oppose the motion.
- o A response to the motion has not been filed with the court.
- o Good cause has been filed with the court.
- o The court agrees with the reasons stated in the opposition to the motion.
- o The motion is timely per _______________
- o Other

Deadlines:

- o The application for relief must be filed by ___________
- o The respondent must comply with DHS biometrics instructions by ______________

URRUTIA CASTELLON, MASSIEL

**PROOF OF SERVICE**

On 06/18/2025, I Erika Hernandez, served a copy of this **Motion to Reopen the In Absentia Removal Order** and my attached pages to DHS Office of the Chief Counsel at the following address 300 N. Los Angeles Street Suite 1240 Los Angeles, CA 90012 by HAND DELIVERY.

Date: 06.18.2025 Signature: ____________________

EXHIBIT 12

Denial of First MTR

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**LOS ANGELES - N. LOS ANGELES ST.**
**IMMIGRATION COURT**

| | |
|---|---|
| Respondent Name:<br>URRUTIA CASTELLON, MASSIEL<br>To:<br>Abrams, Alan K<br>1875 century park e 1025<br>Century city, CA 90067 | A-Number:<br>240-262-057<br>Riders:<br>In Removal Proceedings<br>Initiated by the Department of Homeland Security<br>Date:<br>07/10/2025 |

**ORDER OF THE IMMIGRATION JUDGE**

Respondent was ordered removed from the United States *in absentia* on 05/19/2025

☑ Respondent ☐ the Department of Homeland Security has now filed a motion to reopen these proceedings.

Upon reading and considering the motion, and any opposition from the non-moving party, the motion is ☐ granted ☑ denied for the following reason(s):

☑ Failure to demonstrate that Respondent's failure to appear was the result of exceptional circumstances. *See* INA § 240(b)(5)(C)(i), (e)(1).

☐ Failure to demonstrate that the Respondent did not receive notice under INA § 239(a)(1)-(2). *See* INA § 240(b)(5)(C)(ii).

☑ Other:

Respondent filed an application for asylum, withholding and CAT. Direct testimony was completed on 1/21/2025 and the case was reset for cross examination to be conducted on 5/19/2025 at 8:30. The Court issued a written order with the new date but the Court also told the respondent and counsel the new date at the end of the 1/21/2025 hearing.
Neither the respondent nor counsel appeared on 5/19/2025 and the Court ordered respondent removed.
Counsel has filed a motion to reopen and has thoroughly documented his good cause for failing to appear in Court.
However, the motion does not explain why the respondent failed to appear. She was specifically told that she must appear or the Court could order her removed. No explanation has been given as to why respondent did not log onto the proceedings and explain that she could not reach her lawyer. If she lacked access to a computer or to the login information, she could have appeared in person at 300 North Los Angeles Street and asked the Clerk what to do. There is no indication that she did that. And the physical address of the Court is on the Notice of Hearing - which also contains warnings for the ramifications for failure to appear.

Because the motion has failed to explain why respondent failed to appear, the Court will DENY the motion to reopen.

NMR

Immigration Judge: Miller, Nancy 07/10/2025

| | | | | | |
|---|---|---|---|---|---|
| Appeal: | Department of Homeland Security: | ☐ | waived | ☐ | reserved |
| | Respondent: | ☐ | waived | ☐ | reserved |

Appeal Due:

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : URRUTIA CASTELLON, MASSIEL | A-Number : 240-262-057

Riders:

Date: 07/10/2025 By: Berumen, Marisol, Court Staff

# EXHIBIT 13

## EOIR Automated Case Information

An official website of the United States government Here's how you know

EOIR | Automated Case Information

**Court Closures Today** September 2, 2026

Please check https://www.justice.gov/eoir-operational-status for up to date closures.

Home > **URRUTIA CASTELLON, MASSIEL (240-262-057)**

# Automated Case Information

**Name: URRUTIA CASTELLON, MASSIEL | A-Number: 240-262-057 | Docket Date: 11/3/2022**

## Next Hearing Information

*There are no future hearings for this case.*

## Court Decision and Motion Information

The immigration judge ordered **REMOVAL**.

**DECISION DATE**
May 19, 2025

**COURT ADDRESS**
300 N. LOS ANGELES ST. RM 4330
LOS ANGELES, CA 90012

**MOTION TO REOPEN, IJ JURISDICTION**
A Motion to Reopen IJ Jurisdiction was **RECEIVED** on **August 14, 2026**.

## BIA Case Information

No appeal was received for this case.

## Court Contact Information

If you require further information regarding your case, or wish to file additional documents, please contact the immigration court.

**COURT ADDRESS**
300 N. LOS ANGELES ST. RM 4330
LOS ANGELES, CA 90012

**PHONE NUMBER**

# EXHIBIT 14

Medical Records of Kenneth Blandon

KAISER PERMANENTE®

**Member name:** Kenneth Blandon

**Date of birth:** 5/1/1989

**Primary care physician:** EDWARD BO LIN DO, D.O.

**Date printed:** 2/20/2026

# ALLIED HEALTH/NURSE VISIT - MH/BH - Feb 13, 2026

with COURTNEY NICOLE HUTTON LCSW at Psychiatry 5th Floor

## Notes

Progress Notes by COURTNEY NICOLE HUTTON LCSW at 2/13/2026 2:15 PM

Status: Signed

**DOWNEY DEPARTMENT OF PSYCHIATRY**
**OUTPATIENT INITIAL ADULT DIAGNOSTIC EVALUATION AND TREATMENT PLAN**

| OUTPATIENT INITIAL ADULT DIAGNOSTIC EVALUATION AND TREATMENT PLAN |
|---|

Type of Visit: Licensed Therapist: This patient is new to me. BBS Status: I've provided the required BBS Notice to Clients. In Person

Patient seen in the following program/location: Psychiatry – Outpatient
BELLFLOWER MEDICAL OFFICES U
PSYCHIATRY 5TH FLOOR
9400 E ROSECRANS AVE
BELLFLOWER CA 90706-2246
833-574-2273
* Clinic information, confidentiality policies, and emergency services reviewed.
* Disclosure of clinician's credentials

| IDENTIFYING INFORMATION: |
|---|

| | |
|---|---|
| **Date of Session:** 2/14/2026<br>**Patient Name:** Kenneth Blandon<br>**Age:** 36 year old<br>**Pronouns:** He | **Those attending session/Source of information*:** patient and chart*_Release of Information included when applicable._ |

| | |
|---|---|
| **Gender Identity:** male<br>**Sex assigned at birth:** male<br>**Sexual Orientation:** Heterosexual (not lesbian or gay)<br>**Ethnicity:** Other [63] | **Preferred Language for this Session:** English<br>**Kenneth referred by**: Self<br>**Emergency contact**: Massiel Blandon (wife) 213-422-7286 |

**Current Relationship status**: married
**Living Situation**: Lives with spouse
**Employment/School/Occupational Status**: employed
**Currently identifies with (faith/religion/spirituality), if applicable:** Christian

## TREATMENT PROGRESS INDICATOR (TPI)

**Behavioral Impairment Score (BHI):**

| | 2/13/2026 |
|---|---|
| **TPI Behavioral Health Impairment** | |
| Behavioral Health Impairment (BHI) Severity Score: | 15 |
| Behavioral Health Impairment (BHI) Severity Range: | Low |

**PHQ:**

| | 2/13/2026 |
|---|---|
| **TPI PHQ9 Severity (Depression)** | |
| Depression - PHQ2 Screen: | Negative |
| Depression - PHQ9 Score: | 13 |
| Depression - PHQ Severity Range: | Moderate |

**GAD:**

| | 2/13/2026 |
|---|---|
| **TPI GAD Severity (Anxiety)** | |
| Anxiety - GAD-2 Screen | Negative |
| Anxiety - GAD Score | 6 |
| Anxiety - GAD Severity Range | Mild |

**Critical Alerts:**

| | 2/13/2026 1:50 PM | 8/5/2019 1:00 PM |
|---|---|---|
| **TPI Critical Alerts** | | |
| History of Suicidal Thoughts: | No | |
| Current Suidical Thoughts within the last two weeks: | No | |

| | 2/13/2026 1:50 PM | 8/5/2019 1:00 PM |
|---|---|---|
| Current Thoughts of Harming Others within last two weeks: | No | |
| Last 2 wks: Thoughts of death/self harm | Not at all | |
| CSSRS Ideation Score | | 0 |
| CSSRS Total Score | | 0 |
| CSSRS Risk Level | | Low Suicide Risk |

Data saved with a previous flowsheet row definition

**PRESENTING PROBLEM:**

**Describe the reason patient is seeking care at this time :** Kenneth is seeking services today due to: feelings of being overwhelmed and feeling on edge with fears regarding wife going through the immigration process and fears of wife being detained by immigration officials. Patient states that he has been experiencing racing thoughts that he has a difficult time redirecting or stopping these thoughts which are centering around his wife being detained or their home being raiding to detain her. Patient states that he has been experiencing increased periods of sadness when these thoughts are occurring which are difficult to overcome. Patient states that the symptoms of anxiety initially started occurring after he got married and stressors related to wife's immigration status were continuing to be brought up among his family. Patient states that when he started the process in November of 2024 and seeing the increase in raids and people being picked up off the street he noticed that the symptoms of anxiety began to intensify. Patient states that he has noticed a marked increase in difficulty in concentration during his shifts at work. Patient states increased anxiety related to the difficulties in focusing due to the nature of his job and needing to be aware of his surroundings. Patient states that he has noticed becoming more irritable at work with coworkers and others he works around. Patient states that he's noticed an increase in neck pain that has been progressively becoming worse and has noticed that it has been effecting work as he's having to move around more to manage it. Patient states that he's noticed being on edge when leaving the home with spouse or her leaving the home due to fears of his wife being detained by immigration officials while she is out. Patient states trying to avoid thoughts or triggers that lead to thinking more about his fears. Patient states that he worries that by thinking about his fears too much "I'll think it into existence." Patient states that despite him trying to avoid triggers that remind him of the ongoing potential threat of wife not being around, he notices it still coming to the surface and causing more distress. Patient states that he feels guilty and worries that he is not moving the process fast enough and fears that it might lead to issues with immigration status. Patient states that he often struggles with broken sleep due to racing thoughts regarding fears for his wife. Patient states that there have been times when he was not able to see his wife as frequently due to their work schedules and noticed an increase in anxiety and racing thoughts regarding his wife's safety Patient states that he has had an increased appetite, which his wife also brought to his attention. Patient states that he has observed that it occurs when he is stressed. Despite TPI GAD scores, when exploring symptoms of anxiety Patient states that the symptoms occur 6-7 days a week. Patient states that when he sees raids or news regarding

immigration issues he notices increases in anxiety. Patient states that the intensity has been "high." During the intake, Patient was observed by the provider to be tearful, fidgeting, and looking down when discussing the situation.

**Does member have Medi-Cal?** No

**DSM SYMPTOM EVALUATION:**

**Depressive and Bipolar Disorders:**
Sadness, tearfulness, sleep disturbances, appetite disturbances, decreased energy, decreased /concentration, guilt

**Anxiety Disorders**
Excessive anxiety and worry more days than not about a number of events or activities, the patient finds it difficult to control the worry, with onset 2024, and the anxiety and worry are associated with: restlessness or feeling keyed up or on edge , being easily fatigued , difficulty concentrating or mind going blank , irritability , muscle tension , and sleep disturbance

**Trauma and Stressor Related Disorders**
Development of emotional or behavioral symptoms in response to an identifiable stressor(s) that occurred on 2024, with marked distress out of proportion to the severity or intensity of the stressor(s) causing significant impairment in social, occupation, or other important areas of functioning as evidenced by being on edge, racing thoughts/worries, sleep disturbances, decreased concentration.

**Obsessive-Compulsive and Related Disorders**
Assessed and symptoms of obsessive-compulsive and related disorders do not appear present at this time.

**Neurodevelopmental Disorders**
Assessed and symptoms of neurodevelopmental disorders do not appear present at this time.

**Feeding and Eating Disorders**
Assessed and symptoms of feeding or eating disorders do not appear present at this time.

**Schizophrenia Spectrum and Psychotic Disorders**
Assessed and symptoms of schizophrenia or psychosis do not appear present at this time.

**Other Clinically Relevant Symptoms**
assessed and no other clinically relevant symptoms appear present at this time.

**What helps decrease or lessen the severity of Kenneth's symptoms or functional impairment(s)?** Patient states spending time with spouse and speaking with her as she's his social support helps decrease symptoms. Patient states that when he starts to notice the increase in anxiety at work he will try to take a break to ground himself by looking at pictures of him and his wife.

**Please identify strengths, hobbies, and coping strategies:** playing video games with spouse, watching movies with spouse

**RISK ASSESSMENT/SAFETY:**

**Self-Injury/History of Self Injury:** Patient denies

**History of Suicide Attempts:** Patient denies

**Suicidal Ideation:** Patient Denies

**History of Harm to Others:** Patient denies.

**Homicidal Ideation:** Patient Denies

**Access to firearms or other weapon(s):** Patient endorses access to firearms occupation issued

**Experiences of trauma or abuse that** Kenneth Blandon **is comfortable discussing today:**
**Have you ever been pushed, shoved, hit, slapped, kicked, or otherwise physically hurt?** Patient denies at this time.
**Have you ever been forced to have sexual activities?** Patient denies at this time.
**Has anyone important to you ever insulted, screamed, cursed at, or threatened you with harm?** Patient denies at this time.
**Have you ever lacked appropriate care by any caregiver?** Patient denies at this time.
**Are you afraid of your partner or anyone important to you?** Patient denies at this time.

**PSYCHIATRIC HISTORY:**

**Outpatient Treatment**: Yes (Diagnosis/Medications & Approximate Date) Patient states in June 2024 for about 3 mos

**Behavioral Health Hospitalizations**: No

**Other stressful life events or changes:** Yes, ongoing immigration case and fears regarding wife's case

**RELEVANT FAMILY HISTORY (if indicated):**

**Family history of psychiatric issues** (Can include diagnoses, psychiatric symptoms, suicide attempts, or hospitalizations): Patient states mom having mood swings and agitation. Patient states his dad gets more emotional.

**Family history substance abuse:** alcohol: dad

**SOCIAL HISTORY** (if indicated):

**Family Relationships** (describe patient's relationship with family members and/or partner): Patient states parents have been separated since he was 5 years old.

Patient states that his mom and Patient have a more strained relationship. Patient states that his father and him have a good relationship. Patient states he's the oldest son and has a younger brother and a younger half sister. Patient states that he has a happy relationship with wife. Patient states that he feels he's able to open up with wife. Patient states he feels they have built their relationship on a good foundation as he has known his wife since they were younger and had been friends with her for a long time prior to moving to a romantic relationship. Patient states that he feels that they help to support each other especially if one of them has a bad day.

**Social Support** (describe patient's relationship with others through the lifespan): Patient states wife has been a big social support. Patient states that he feels his only social support is his wife. Patient states that he doesn't have a lot of social support as he doesn't feel he's able to trust others in order to share more of his stressors with people outside of his wife. Patient states having more superficial relationships with others.

**Current or history of legal issues** (Ex. Custody, probation, parole, recent incarceration)**:** yes, ongoing immigration case for wife

**SUBSTANCE USE ASSESSMENT:**

**<u>Per TPI:</u>**
**Current Alcohol Use:**

| | 2/13/2026 1:50 PM |
|---|---|
| **TPI Alcohol use Audit-C** | |
| Alcohol Use - AUDIT C Score: | 0 |
| Alcohol Use - AUDIT C Risky Drinking Indicator: | Negative |
| Drinks Alcohol: | Never |

**Current Substance Use:**

ⓘ **No data to display**

**Past Substance Use:**

| | 2/13/2026 1:50 PM |
|---|---|
| **TPI Drug Use - Past Year** | |
| Past Year - Drug or Prescription Drug Use for non-medical reason: | No |

**Current use of alcohol past or present**: Patient denies
**Have you ever had concerns about unhealthy use or a desire to cut back by finding other alternatives?** N/A

**Current or past use of other substances licit or illicit?** Patient Denies

**Have you ever had concerns about unhealthy substance use or a desire to cut back by finding other alternatives?** N/A

## MEDICATIONS (Current and Past):

Per medical record:
Current Outpatient Medications:
• traMADol (ULTRAM) 50 mg Oral Tab, Take 1 tablet by mouth every 6 hours as needed for pain . Do not exceed 4 tablets in 24 hours, Disp: 12 tablet, Rfl: 0
• Meloxicam (MOBIC) 15 mg Oral Tab, Take 1 tablet by mouth daily as needed for pain or inflammation . Take with food, Disp: 30 tablet, Rfl: 0
• Tadalafil (CIALIS) 10 mg Oral Tab, Take 1 tablet by mouth one time at least 30 minutes prior to sexual activity. Do not exceed 1 tablet in 24 hours, Disp: 8 tablet, Rfl: 0
• Ibuprofen (MOTRIN) 800 mg Oral Tab, Take 1 tablet by mouth every 8 hours as needed for pain . Take with food, Disp: 50 tablet, Rfl: 0
• Cyclobenzaprine (FLEXERIL) 10 mg Oral Tab, Take 1 tablet by mouth 3 times a day as needed for muscle spasms, Disp: 30 tablet, Rfl: 0
• Varenicline (CHANTIX) 1 mg Oral Tab, Take half tablet by mouth daily for 4 days, then half tablet 2 times a day for 4 days, then 1 tablet 2 times a day thereafter (Patient not taking: Reported on 1/22/2026), Disp: 46 tablet, Rfl: 0
• Varenicline (CHANTIX) 1 mg Oral Tab, Take 1 tablet by mouth 2 times a day (Patient not taking: Reported on 1/22/2026), Disp: 56 tablet, Rfl: 1
• Tadalafil (CIALIS) 10 mg Oral Tab, Take 1 tablet by mouth daily as needed (1 hour prior to sexual activity. DO NOT use more than 1 tablet in 24 hours), Disp: 8 tablet, Rfl: 4

## MEDICAL PROBLEMS:

*Patient Active Problem List*
Per medical record: *Patient Active Problem List:*
*OBESITY, BMI 30-34.9, ADULT*
*FATTY LIVER.*
*INTERMITTENT ASTHMA, CONTROLLED*
*HX OF SMOKING*
*ELECTRONIC NICOTINE DELIVERY SYSTEM USER*
*HYPERLIPIDEMIA*
*VITAMIN D DEFICIENCY*
*ERECTILE DYSFUNCTION*
*FAMILY STRESS*
*RIGHT KNEE JOINT PAIN*

**Other significant medical history**: Patient denies
**History of Seizures**: Patient denies
**History of Head trauma**: Patient denies

## MENTAL STATUS EXAM:

**Appearance:** Kempt and Appears stated age
**Behavior:** Appropriate eye contact in cultural context Within normal limits
Mannerisms hugging himself, fidgeting

**Mood:** Anxious
**Affect:** Congruent with mood
**Speech:** Normal rate of speech
**Thought process:** Linear
**Cognition:** Alert and Oriented to name, time, date, situation
**Impulse control:** Intact
**Judgement:** Intact
**Insight**: Good

**DSM DIAGNOSIS SUPPORTED BY DIAGNOSTIC ASSESSMENT:**

1. ADJUSTMENT DISORDER W ANXIETY
2. FAMILY STRESS

**CLINICAL IMPRESSION:** Kenneth does endorse functional impairment(s) in the area(s) of daily activities, social relationships, and occupation, which appear to be a result of the following psychiatric symptoms: sleep disturbances, restlessness, racing thoughts, trouble concentrating.

**TREATMENT RECOMMENDATION AND PLAN:**

Treatment course, in terms of goals, duration and frequency of visits to be evaluated and adjusted based on treatment progress at each visit.

**Initial Treatment Goals Discussed with Patient:**
Patient's goals for care in their own words: "lowering anxiety" "sense of internal peace"
Recommended Initial Clinical Goals (specificity and measurability will be addressed in future sessions): Decrease anxiety/nervousness and Decrease worry, Increase concentration

**Recommended Evaluation for Inpatient Treatment:** Not Applicable

**Recommended Outpatient Therapy, Case Management and Intensive Treatments:** Individual Therapy: It is recommended the member return within the next 10 business days (2/27/26). Patient booked outside of 10 business days and escalated for scheduling assistance. First Offered: 2/ 28/ 2026

**Additional Treatment Recommendations and Referrals:** No additional treatment recommendations or referrals

**Treatment Interventions used in session:** Diagnostic intake interview including assessment of symptoms, strengths/resources, risks and psychosocial and environmental challenges.

**Was an Off-Work/Activity RX Order Provided?** No

**INFORMED TREATMENT CONSENT**:
Patient was provided with information regarding treatment options available for their condition and was explained their recommended treatment plan.

Risks and benefits of recommended treatment was reviewed with the patient.

Based on assessment, Patient appears to have the ability and capacity to respond and benefit from treatment: Yes

Patient agrees to continue with proposed treatment: Yes

**SAFETY INFORMATION PROVIDED:**
Therapist provided the following information:
If an emergency, call 911 or go to your nearest emergency room.
After hours for urgent needs, call the 24/7 Behavioral Healthcare Line (800) 900-3277.
Suicide and Crisis Lifeline: Call or text 988

**Electronic Signature:**
**NAME:** COURTNEY NICOLE HUTTON LCSW
**Date:** 2/13/2026

Certain content delivered by MyChart®, licensed from Epic Systems Corporation, © 1999 to February 2025, patents pending.

# EXHIBIT 15

Renewed MTR

**LAW OFFICE OF ERIKA ROMAN**
**Erika Roman-Maury, Esq. CA Bar 216323**
**20058 Ventura Blvd. #137**
**Woodland Hills, CA 91364**
**310.850.0319**
**818.385.1041- fax**
**erika@elrlawgroup.com**
***Attorney for Respondent***

**DETAINED**

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**300 NORTH LOS ANGELES IMMIGRATION COURT**

| | |
|---|---|
| **In the Matter of:**<br><br>**Massiel Urrutia Castellon**<br><br>**A# 240-262-057**<br><br>**Respondent,** | **IN REMOVAL PROCEEDINGS** |

**RENEWED MOTION TO REOPEN AND RESCIND INABSENTIA ORDER OF REMOVAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WITH AUTO STAY**

# I. INTRODUCTION

Respondent herein submits this **Motion to Reopen.** Counsel will be supplementing the motion shortly but is filing now as respondent is in danger of being removed at this time. This matter is so egregious that US Congressman Robert Garcia is getting involved and his office will be sending a letter for counsel to attach as an exhibit later.

In short, the Court at a prior merits hearing informed respondent of the next hearing date in person and respondent failed to show up. Respondent's attorney filed a prior motion to reopen and explained that he was sick. While that may be true, that had nothing to do with respondent's failure to appear. Prior counsel assumed that the court would be canceled and per the declaration attached of respondent (**see exhibit A**), emphatically told respondent not to go to the hearing. The merits had already begun and it was set for cross examination. Respondent trusted her counsel and asked several times if she needed to go since he was not showing up and he told her "don't go." She had no idea she was ordered removed. She has everything to lose by not attending. Not only did she have a viable asylum claim but an approved I-130 from her USC Los Angeles Sheriff husband but also a waiver pending, in the event they would need to do consular processing, (**please see exhibit B**). Respondent had several forms of relief and would never not show up and risk her life and future here in the United States. She looked at her attorney as an individual who had authority and trusted whatever he told her. He made misrepresentations to the court in the prior motion to reopen that he did not review with respondent. Therefore, respondent filed a bar complaint **(see exhibit C,** receipt of bar complaint) and she and current counsel are following all matter of Lozada steps to be in compliance.

## II. AUTHORITY

A respondent has a right to file one motion with the Immigration Judge (IJ) or the Board of Immigration Appeals (BIA or Board) to reopen his or her removal proceedings. *Dada v. Mukasey*, 554 U.S. 1, 4-5 (2008); See INA § 240(c)(7)(A). Such motion to reopen shall generally be filed within 90 days of the final removal order. See INA § 240 (c)(7)(C)(i), (the INA permits a person one motion to reopen and the motion must usually be filed within 90 days of the date of entry of a final administrative order of removal); 8 C.F.R. § 1003.23(b)(1). Also, the Court may reopen removal proceedings on its own motion or sua sponte—at any time. *Mata v. Lynch*, 576 U.S. 143, 145 (2015). See also *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020). Here, respondent is filing a second motion to reopen due to newly discovered ineffective assistance of counsel. At a later time, the motion will be supplemented to include a section on tolling the time.

A motion to reopen must be supported by affidavits, the new evidentiary material sought to be introduced, and, if necessary, a completed application for relief. See INA section 240A(c)(7)(B); 8 C.F.R. § 1003.2(c)(1); see *INS v. Wang*, 450 U.S. 139, 143 (1981) (per curiam) (upholding BIA's denial of motion to reopen to apply for suspension of deportation because "the allegations of hardship were in the main conclusory and unsupported by affidavit"); *Agonafer v. Sessions*, 859 F.3d 1198, 1204 (9th Cir. 2017) ("A motion to reopen 'shall be supported by affidavits or other evidentiary material.' 8 C.F.R. § 1003.2(c)(1)."); *Patel v. INS*, 741 F.2d 1134, 1137 (9th Cir. 1984) ("[I]n the context of a motion to reopen, the BIA is not required to consider allegations unsupported by affidavits or other evidentiary material."); *Meza-Vallejos v. Holder*, 669 F.3d 920, 924 (9th Cir. 2012) ("A motion to reopen is a traditional procedural mechanism in immigration law with a basic

purpose that has remained constant – to give aliens a means to provide new information relevant to their cases to the immigration authorities").

While the Court has broad discretion in ruling on a motion to reopen, it must show proper consideration of all factors, both favorable and unfavorable, in determining whether to grant a motion to reopen." *Toufighi v. Mukasey*, 538 F.3d 988, 993 (9th Cir.2008).

Respondent respectfully moves the Court to reopen and rescind the order so that respondent can move forward on her merits trial. The Respondent is the victim of ineffective assistance of counsel (IAC) as her prior attorney provided affirmative misadvice and told her not attend solely because he was not going to show up due to illness. She trusted him and followed his advice. The court was not canceled as he relayed to the respondent. The Ninth Circuit Court of Appeals (Ninth Circuit) has addressed this situation of an attorney pressuring a client before in *Nehad v. Mukasey*, 535 F.3d 962, 971-72 (9th Cir. 2008), **where the Court concluded that counsel's performance was deficient where counsel pressured client to accept voluntary departure under threat of counsel's withdrawal two hours before hearing**. (emphasis added). Here, prior counsel effectively abandoned the respondent, told her not to go because he wouldn't be there, didn't ask for another attorney to appear for him but most egregious, told her incorrectly the court would be canceled. He failed her in everyway possible.

Ineffective assistance of counsel in an immigration proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that an applicant was prevented from reasonably presenting her case. *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir. 1999); see also *United States v. Lopez-Chavez*, 757 F.3d 1033, 1041 (9th Cir. 2014); *Maravilla Maravilla v. Ashcroft*, 381 F.3d 855, 857–58 (9th Cir. 2004) ("An alien's right to a full and fair presentation of his claim includes the right to have an attorney who would present a viable legal

argument on his behalf supported by relevant evidence, if he could find one willing and able to do so.")

By failing to proceed on her applications for relief and pressuring Respondent not to go, assuring her the case would be reset, prior counsel committed terrible harm. Respondent submits that prior counsel failed to perform with sufficient competence and the Respondent suffered prejudice by not pursuing her applications for relief and being issued a removal order for not showing up at counsel's direction. See *Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005).

The Ninth Circuit has consistently held that attorneys should not be held to an exacting standard, but they must also not interfere with their client's desire to proceed with their applications. See *Kwong v. Holder*, 671 F.3d 872, 881 (9th Cir. 2011) ("We do not require that [petitioner's] representation be brilliant, but it cannot serve to make [the] immigration hearing so fundamentally unfair that [petitioner] was prevented from reasonably presenting his case."); *Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004) (Impinging on a petitioner's "authority to decide whether, and on what terms, to concede his case" by failing to insure counsel's withdrawal will not prejudice the petitioner can "effectively deprive[] [the petitioner] of the ability to present his case . . . .").

Respondent contracted with her prior attorney to fully litigate her applications for relief, respondent submits that she was told to violate the court's order by her prior counsel. Prior counsel's performance "was so inadequate that it may have affected the outcome of the proceedings" for the Respondent. See *Iturribarria v. INS*, 321 F.3d 889, 899-900 (9th Cir. 2003); *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir. 1999); *Santiago-Rodriguez v. Holder*, 657 F.3d 820, 835-36 (9th Cir. 2011); *Flores v. Barr*, 930 F.3d 1082, 1087 (9th Cir. 2019).

1. ***Ineffective Assistance of Counsel***

A motion to reopen based on ineffective assistance of counsel must generally meet the three procedural requirements set forth by the Board of Immigration Appeals, (BIA) in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988). The petitioner must:

> 1) submit an affidavit explaining his agreement with former counsel regarding his legal representation, 2) present evidence that prior counsel has been informed of the allegations against her and given an opportunity to respond, 3) either show that a complaint against prior counsel was filed with the proper disciplinary authorities or explain why no such complaint was filed.

*Iturribarria v. INS*, 321 at 900; see also *Al Ramahi v. Holder*, 725 F.3d 1133, 1138-39 (9th Cir. 2013).

Respondent filed a complaint to the State Bar of California and respondent has submitted an affidavit explaining her agreement with her former counsel regarding her legal representation, and factual circumstances surrounding her relationship with her previous Counsel.

For purposes of motion to reopen deportation proceedings, the Ninth Circuit Court of Appeals has held that the BIA must accept as true factual statements contained in affidavits submitted by Respondent. *Hernandez –Ortiz v. INS*, 777 F.2d 509 (9th Cir.1985); *Bhasin v. Gonzales*, 423 F.3d 977, 986-987 (9th Cir.2005) ("The BIA must accept facts presented in affidavits supporting a motion to reopen as true 'unless inherently unbelievable'…We have long held that credibility determinations on motions to reopen are inappropriate."); See *Maroufi v. INS*, 772 F.2d 597, 600 (9th Cir. 1985) ("The BIA is required to accept as true the facts stated in an alien's affidavit in ruling upon his motion to reopen unless it finds those facts to be 'inherently unbelievable.' ") (citation omitted); See *Agonafer v. Sessions*, 859 F.3d 1198, 1203 (9th Cir. 2017) ("In considering a

motion to reopen, the BIA must accept as true the facts asserted by the petitioner, unless they are 'inherently unbelievable.' " (quoting *Limsico v. INS*, 951 F.2d 210, 213 (9th Cir. 1991))); *Arredondo v. Lynch, 824 F.3d 801, 806 (9th Cir. 2016)*, (BIA erred by disregarding the petitioner's affidavit, as it was not inherently unbelievable or incredible); See *Celis-Castellano v. Ashcroft*, 298 F.3d 888, 890 (9th Cir. 2002) (holding the BIA must accept as true any statements made in a respondent's affidavit submitted with a motion to reopen, unless those claims are inherently unbelievable).

In the instant case, Respondent is eligible for relief. Respondent herein is simply praying for the opportunity to fully litigate and complete her case in court.

2. ***Sua Sponte Authority***

In the alternative, the Court should reopen the prior order *sua sponte*. *See* 8 C.F.R. § 1003.23(b)(1). Reopening sua sponte is warranted due to the exceptional circumstances. *See Matter of G- D-*, 22 I&N. Dec. 1132, 1134 (BIA 1999); *Matter of J- J-*, 21 I&N Dec. 976, 984 (BIA 1997). In this case, Respondent did not receive proper representation and has always wished to fully litigate her case. At no point did she ever express a willingness to consider voluntary departure. *See Menendez-Gonzalez v. Barr*, 929 F.3d 1113, 1116 (9th Cir. 2019). "Similarly, '[a]n Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case… In practice, the agency's decision to exercise its sua sponte authority is often not actually initiated by the agency on its own but is instead prompted . . . by a party filing a motion to reopen sua sponte."

**<u>CONCLUSION</u>**

It is in the best interests that all cases be decided on the merits. In the present case, substantial inequities would result if Respondent was not allowed to fully litigate her case. Respondent is requesting to be given her due process rights to be allowed an opportunity to present her case based on the facts and evidence involved.

The Respondent acknowledges and respects that the Court may order her removal. Respondent herein is simply praying for the opportunity to fully litigate her case.

Therefore, we pray the Court will grant Respondents' Motion to Reopen Removal Proceedings.

WHEREFORE, Respondent, by and through his undersigned counsel, prays that this Honorable Court:

Grant Respondent's Motion to Reopen and set the case for a final hearing on her applications for relief.

Dated: August 14, 2026

Respectfully Submitted,

**LAW OFFICE OF ERIKA ROMAN**

Erika Roman-Maury, Esq.

*Attorney for Respondent*

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
300 NORTH LOS ANGELES IMMIGRATION COURT

**Matter of: Urrutia Castellon, Massiel** **Alien No.: A240-262-057**

# ORDER OF THE IMMIGRATION JUDGE

Upon consideration of the **RENEWED MOTION TO REOPEN AND RESCIND INABSENTIA ORDER OF REMOVAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WITH AUTO STAY**, it is HEREBY ORDERED that the motion be:

GRANTED DENIED because:

DHS does not oppose the motion.

The respondent does not oppose the motion.

A response to the motion has not been filed with the court

Good Cause has been established for the motion.

The court agrees with the reasons stated in the opposition to the motion.

The motion is untimely per ______________________________.

Other:

Deadlines:

The application(s) for relief must be filed by ____________________________.

The respondent must comply with DHS biometrics instructions by __________.

Date: ______________ Signed: _____________________________
Honorable Immigration Judge

---

**Certificate of Service**

**This document was served by: [ ] Mail [ ] Personal Service**
**To: [ ] Alien [ ] Alien c/o Custodial Officer [ ] Alien's Atty/Rep [ ] DHS**
**Date:________________________ By: Court Staff______________________**

EOIR 10 of 27

EXHIBIT A

**DECLARATION OF MASSIEL URRUTIA CASTELLON**
**IN SUPPORT OF MOTION TO REOPEN A240-262-057**

I, Massiel Urrutia Castellon, under penalty of perjury certify that the forgoing declaration is true and accurate. That all of the foregoing statements are my own and to the best of my knowledge.

1. My true and correct name is Massiel Urrutia Castellon, and I am a citizen and national of Nicaragua.

2. I am currently detained at the Adelanto Detention Facility in Adelanto California. My normal residential address is 5815 East Wardlow Road Long Beach California. I reside with my husband – Kenneth Josue Blandon, who is also a United States Citizen and California Deputy Sheriff who is currently working at the Twin Towers Correctional Facility in Los Angeles California.

3. My husband and I were married on August 30, 2024, in Hawaii and an I-130 petition has been filed for me and it has been Approved as of December 2025. After the I130 was approved, we filed the I-601A Unlawful Presence Waiver with USCIS. This application is currently pending.

4. I entered the United States with my ex-husband on February 2, 2022, through Otay Mesa California. We entered and surrendered to the Immigration officers. We were detained for several days, processed and later released. We were informed that I would need to present my case to the immigration court and that I would be issued a future hearing date.

5. I went to live with my ex-husband's family but soon afterwards we had some disagreements and I had to leave him. I found my own place in Los Angeles California and started a life on my own.

6. I retained the services of attorney Alan Abrams in Century City California. He had been helping me with my immigration case and helping me file what was needed after I married my current husband.

7. At my last court in January 2025, I was indeed informed by the Immigration Judge of the next court date of, May 19 2025. I was told to appear for the hearing at the Los Angeles Immigration Court. However, several days before the court, my attorney called me to let me know that he had been ill and that the court would be canceled and rescheduled for a later date. I asked him several

times if I needed to go and he clearly stated that "**No, you do not need to attend.**" I understood from my attorney that the court would be rescheduled and that I didn't need to appear. He is in a position of power and authority and gets notice of the instructions from court. I trusted him and followed his advice and now I find myself with a removal order for not appearing. He told me he would take care of it and I recently reviewed and read the motion to reopen that he submitted. It is replete with errors and misrepresentations. I believe he is trying to cover up his bad actions and negligent conduct. Although he was sick, I was not sick and I certainly could have attended. If not but for his explicit instructions, I would have presented myself for court. It is because he lied to this court and to me, I had no choice but to file a bar complaint.

8. As stated above, my current husband is a sheriff in Los Angeles and he too understands and agrees that I was compliant and when someone in a position of authority, like an attorney or a police officer provides instructions, you are to follow it. I am a victim of this attorney and he should be reprimanded or disciplined. I also plan to file a complaint with the executive office of immigration review.

9. I have now filed a California State Bar complaint against my previous attorney and I have sought the help of my current attorney to help me reopen my immigration removal proceedings with the Los Angeles Immigration court.

10. I now come and beg with this court to please grant this *Motion To Reopen*. I had everything to lose but not attending, given we already started my merits and we were going to proceed to cross examination, I also have an approved I-130 and a waiver pending for consular processing. In the event that I didn't win my asylum case, I would have tried for voluntary departure if possible since I have other forms of relief. Why would I not show up? This makes no sense and this prior attorney was dishonest and disorganized due to his illness. However, why should I pay the price? I never had any intentions of evading any immigration laws. My husband is employed by the state of California as a law enforcement officer. I would never try to defraud the United States in any way shape or form. I once again ask and plead with this court to grant my request to reopen my proceeding so that I can complete this process and proceed with my life in the United States with my husband.

11. I could and I would testify to any and all of the above stated facts before a court of law if called upon to do so.

The present declaration is issued at the request of the party in interest in this city of Van Nuys, California on this 13th Day of August 2026.

Declarant,

Massiel Urrutia Castellon

EOIR 14 of 27

# EXHIBIT B

THE UNITED STATES OF AMERICA

# I-797 | NOTICE OF ACTION

DEPARTMENT OF HOMELAND SECURITY
U.S. CITIZENSHIP AND IMMIGRATION SERVICES

| Receipt Number | | Case Type |
|---|---|---|
| IOE9551223953 | | I130 - PETITION FOR ALIEN RELATIVE |
| Received Date: 11/29/2024 | Priority Date: 11/29/2024 | Petitioner: BLANDON, KENNETH JOSUE |
| Notice Date: 12/30/2025 | Page: 1 of 1 | Beneficiary A240 262 057: BLANDON, MASSIEL |

BLANDON, KENNETH JOSUE
PO BOX 1371 352 CEDARBROOK DRIVE
TWIN PEAKS CA 92391-1371

**Notice Type:** Approval Notice
Section: Husband or wife of U.S Citizen, 201(b) INA

The above petition has been approved. As the petitioner requests, we have sent the petition to the U.S. Department of State National Visa Center (NVC), 32 Rochester Avenue, Portsmouth, NH 03801-2909. The NVC processes all approved immigrant visa petitions that need consular action, including the collection of necessary forms and documents. It also determines which consular post is appropriate to complete visa processing. The NVC will then transfer the approved petition to the consular post once processing has been completed and an interview has been scheduled at the Embassy or Consulate.

The NVC will contact the beneficiary of this petition with further information about immigrant visa processing steps.

You should allow a minimum of 45 days for U.S. Department of State processing before contacting the NVC. If you have not received any correspondence from NVC within 45 days, you may contact the NVC at https://nvc.state.gov/inquiry.

For more information about NVC processing, please visit https://nvc.state.gov.

**THIS NOTICE IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

NOTICE: Although this application or petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

SCOPS TEXAS FACILITY
U.S. CITIZENSHIP & IMMIGRATION SVC
6046 N BELT LINE RD.
IRVING TX 75038-0001

**USCIS Contact Center: www.uscis.gov/contactcenter**

FORM I-797 [REV. 08/01/16]

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

**THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.**

| ASC Appointment Notice | CASE TYPE I601A - PROVISIONAL UNLAWFUL PRESENCE WAIVER | | NOTICE DATE 07/17/2026 |
|---|---|---|---|
| APPLICATION/PETITION/REQUEST NUMBER YSC2690037372 | | USCIS A# A240 262 057 | CODE 3 |
| ACCOUNT NUMBER | TCR | SERVICE CENTER YSC | PAGE 1 of 2 |

MASSIEL BLANDON
c/o ALAN K ABRAMS
1875 CENTURY PARK EAST STE 2250
CENTURY CITY CA 90067

**READ THIS ENTIRE NOTICE CAREFULLY.** To process your application, petition, or request, U.S. Citizenship and Immigration Services (USCIS) must collect your biometrics. Please appear at the Application Support Center (ASC) at the date and time specified. **TO REQUEST THAT USCIS RESCHEDULE YOUR APPOINTMENT, SEE THE INSTRUCTIONS AT THE BOTTOM OF THIS NOTICE. IF YOU FAIL TO APPEAR AS SCHEDULED, USCIS WILL CONSIDER YOUR BENEFIT REQUEST ABANDONED AND IT MAY BE DENIED.**

| APPLICATION SUPPORT CENTER | DATE AND TIME OF APPOINTMENT |
|---|---|
| USCIS LA BREA<br>3747 South LaBrea Ave<br>Los Angeles CA 90016 | 08/06/2026<br>02:00PM |

**WHEN YOU APPEAR AT THE ASC FOR BIOMETRICS SUBMISSION, YOU MUST BRING:**

1. **THIS APPOINTMENT NOTICE.** If you received multiple ASC notices, bring all notices to your first appointment, and
2. **PHOTO IDENTIFICATION.** You must bring a valid government-issued photo identification. If the name on your identification is different than the name on your ASC notice, bring supporting documents. If you filed an Application for Naturalization (Form N-400) or Application to Replace Permanent Resident Card (Form I-90), you must bring your Permanent Resident Card (also known as a Green Card).

If you are sick, do not visit a USCIS office, follow the instructions on this notice to reschedule your appointment. If you have injuries that may interfere with your biometrics submission, USCIS may reschedule your appointment.

Cell phones or electronic devices must be turned off during biometrics submission. No one may photograph or record at an ASC.

For more information regarding your ASC appointment, visit https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment.

**NOTE:** If an ASC closes due to weather or other reasons, USCIS will automatically reschedule your appointment for the next available date and time and you will receive a new ASC appointment notice. For the latest information on the status of an office, visit https://www.uscis.gov/about-us/uscis-office-closings. Please check this page on the day of your appointment.

You must update your address if you move. For instructions, visit https://www.uscis.gov/addresschange.

USCIS may use your biometrics to check the criminal history records of the FBI, for identity verification, to determine eligibility, to create immigration documents (e.g., Green Card, Employment Authorization Document, etc.), or for any purpose authorized by the Immigration and Nationality Act.

You may obtain a copy of your FBI record using the procedures outlined in 28 C.F.R. 16.32. Visit: https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/identity-history-summary-checks for more information. For Privacy Act information, please visit https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/compact-council/privacy-act-statement.

If you cannot attend your scheduled appointment, you may request to reschedule at https://my.uscis.gov/accounts/biometrics/overview or by calling the USCIS Contact Center at 1-800-375-5283 (TTY 800-767-1833). You must make your request before the date and time of the original appointment, and you must establish good cause for rescheduling. If you fail to make a request before your scheduled appointment or fail to establish good cause, and you do not appear at your appointment, USCIS may consider your application, petition, or request abandoned and, as a result, it may be denied. For more information about rescheduling, see https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment.

If you cannot leave your home/hospital due to a serious ongoing medical condition, you may request a mobile biometrics appointment by following the instructions on the back of this notice under "Notice for People with Disabilities," or by visiting uscis.gov/accommodationsinfo.

**If you have any questions regarding this notice, please contact the USCIS Contact Center at 1-800-375-5283.**



**If this is an interview or biometrics appointment notice, please see the back of this notice for important information.**

# EXHIBIT C

Uploaded on: 08/14/2026 at 05:57:58 PM (Eastern Daylight Time) Base City

The State Bar *of California*

Date: 8/13/2026

# Attorney Misconduct Complaint

## Your Contact Information

| | | |
|---|---|---|
| **Title:** Mrs. | | |
| **First name:** Massiel | **Middle name:** | **Last name:** Urrutia Castellon |
| **Address:** 5815 E. Wardlow Rd | | |
| **City:** Long Beach | **State:** CA | **ZIP code:** 90808 |
| **Email:** kblandon01@hotmail.com | | |
| **Your telephone numbers:** | | |
| **Home:** (626) 234-4340 | **Work:** | **Cell:** |

## Attorney's Information

| | | |
|---|---|---|
| **First name:** Alan | **Middle name:** K | **Last name:** Abrams |
| **Address:** Ste 2250 1875 Century Park E | | |
| **City:** Los Angeles | **State:** CA | **ZIP code:** 90067 |
| **Email:** abrams@lawyer.com | **CA Bar License #:** 208279 | |
| **Primary phone:** (310) 894-8000 | **Other phone:** | |
| **Cell phone:** | **Website:** | |

**Have you or a member of your family complained to the State Bar about this attorney previously?**

○ **Yes** ⦿ **No**

**Did you hire the attorney?**

⦿ **Yes** ○ **No**

**Does this complaint involve allegations of theft or misappropriation of funds?**

○ **Yes** ⦿ **No**

**Does this complaint involve allegations of attorney misconduct against a person 65 years of age or older?**

○ **Yes** ⦿ **No**

**Does this complaint involve allegations of attorney misconduct against a person who is incapacitated, infirm, disabled, incarcerated, an immigrant, or a minor?**

○ **Yes** ⦿ **No**

EOIR 18 of 47

The State Bar of California

Date: 8/13/2026

# Attorney Misconduct Complaint

**Does this complaint involve allegations that the attorney has abandoned a client?**

○ Yes ⦿ No

**Does this complaint involve allegations about an attorney who provided, or was supposed to provide, services related to immigration?**

⦿ Yes ○ No

**Is this complaint being submitted to support an ineffective assistance of counsel claim in immigration court under *Matter of Lozada,* 19 I&N Dec. 637 (BIA 1988)?**

⦿ Yes ○ No ○ Do Not Know

**Are you an attorney?**

○ Yes ⦿ No

**Enter the approximate date you hired the attorney and the amount, if any paid to the attorney.**

**Date:** 11/1/2022 **Amount paid:** $5,000.00

**What is your connection with the attorney? Explain briefly.**

**Statement of Complaint**

**Include with your submission a statement of what the attorney did or did not do that is the basis of your complaint. Please state the facts as you understand them. Do not include opinions or arguments. If you hired the attorney(s), state what you hired the attorney(s) to do. Additional information may be requested.**

I contracted EOIR court representation services, I was advised by the attorney not to present my self at the May 15th 2025 court hearing, because it was going to be rescheduled due to his on going medical condition.

## Related Court Case Information

| | |
|---|---|
| **Court name:** Los Angeles Immigration Court | **Case name:** Massiel Urrutia Castellon |
| **Case number:** 240-262-057 | **Approx. date case was filed:** 2/3/2022 |
| **Size of law firm complained about** 1 Attorney | |
| **If you are not a party to this case, what is your connection with it? Explain briefly.** | |

## Attachments

☑ **No files attached**

The State Bar of California

Date: 8/13/2026

# Attorney Misconduct Complaint

## Translation Information

☑ Not applicable

The State Bar accepts complaints in over 200 languages. If you need translation services to communicate with the State Bar, please let us know by completing this section of the complaint form. We will communicate with you through a translation service in the language of your choice. Do you need translation services?

○ Yes ○ No

State the language in which you need formal translation:

## Submission

☑ By checking this box I certify that all information on this form is true and correct. I understand that the content of m y complaint can be disclosed to the attorney. I understand that I waive the attorney client privilege and any other applicable privilege between myself and the attorney to the extent necessary for the investigation and prosec ution of the allegations. I also agree that the checkbox and my name typed below are to be used as my electronic signature.

☑ I understand that if the Office of Chief Trial Counsel (OCTC) prosecutes allegations contained in this complaint, I may be required to testify before the State Bar Court in order to prove the charge or charges or misconduct against the above-named attorney.

☑ I understand that every person who reports to the State Bar or causes a complaint to be filed with the State Bar that an attorney has engaged in professional misconduct, knowing the report or complaint to be false and malicious, is guilty of a misdemeanor.

**Signature** Kenneth Josue Blandon

Uploaded on 08/14/2026 at 05:57:58 PM (Eastern Daylight Time) Base City


The State Bar Court of California ↗

The State Bar of California

Search

# Attorney Misconduct Online Complaint

| Instructions | Your Information | Attorney's Information | Court Information | Attachments | Translation Information | Review |
|---|---|---|---|---|---|---|

## Review Complaint

---

### 1. Your Contact Information

Edit

| | | | |
|---|---|---|---|
| Title | Mrs. | Middle Name | |
| First Name | Massiel | Last Name | Urrutia Castellon |
| Address 1 | 5815 E. Wardlow Rd | | |
| Address 2 | | | |
| City | Long Beach | | |
| State | California | ZIP Code | 90808 |
| Email | klandon01@hotmail.com | Home Phone | (626) 234-4340 |
| Work Phone | | Cell Phone | |

---

### 2. Attorney's Information

Edit

EOIR 21 of 27

Uploaded on: 08/14/2026 at 05:57:58 PM (Eastern Daylight Time) Base City:


| | | | |
|---|---|---|---|
| CA Bar License # | 208279 | Website | |
| First Name | Alan | Middle Name | K |
| Last Name | Abrams | | |
| Address 1 | Ste 2250 | | |
| Address 2 | 1875 Century Park E | | |
| City | Los Angeles | | |
| State | California | ZIP Code | 90067 |
| Email | abrams@lawyer.com | Primary Phone | (310) 894-8000 |
| Other Phone | | Cell Phone | |

Have you or a member of your family complained to the State Bar about this attorney previously?

○ Yes ● No

Did you hire the attorney?

● Yes ○ No

| | | | |
|---|---|---|---|
| Date | 11/01/2022 | Amount Paid | $5000.00 |

Does this complaint involve allegations of theft?

○ Yes ● No

Does this complaint involve allegations of attorney misconduct where a person 65 years of age or older was victimized?

○ Yes ● No

Does this complaint involve allegations of attorney misconduct where a person who is incapacitated, infirm, disabled, incarcerated, an immigrant, or a minor was victimized?

○ Yes ● No

Does this complaint involve allegations that the attorney has abandoned a client?

○ Yes ● No

Does this complaint involve allegations about an attorney who provided, or was supposed to provide, services related to immigration?

● Yes ○ No

EOIR 22 of 27

147

Is this complaint being submitted to support an ineffective assistance of counsel claim in immigration court under *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988)?

(●) Yes ( ) No ( ) Do Not Know

Are you an attorney?

( ) Yes (●) No

Statement of Complaint

I contracted EOIR court representation services, I was advised by the attorney not to present my self at the May 15th 2025 court hearing, because it was going to be rescheduled due to his on going medical condition.

---

## 3. Related Court Case Information

Edit

| | |
|---|---|
| Name of Court | Los Angeles Immigration Court |
| Case Name | Massiel Urrutia Castellon |
| Case Number | 240-262-057 |
| Approx. date case was filed | 02/03/2022 |
| Size of law firm | 1 Attorney |

If you are not a party to this case, what is your connection with it? Explain briefly.

---

## 4. Attachments

Edit

☑ No files attached

---

## 5. Translation Information

Edit

☑ Not Applicable

---

Uploaded on: 08/14/2026 at 05:57:58 PM (Eastern Daylight Time) Base City:



# 6. Submission

- [x] By checking this box I certify that all information on this form is true and correct. I understand that the content of my complaint can be disclosed to the attorney. I understand that I waive the attorney client privilege and any other applicable privilege between myself and the attorney to the extent necessary for the investigation and prosecution of the allegations. I also agree that the checkbox and my name typed below are to be used as my electronic signature.

- [x] I understand that if the Office of Chief Trial Counsel (OCTC) prosecutes allegations contained in this complaint, I may be required to testify before the State Bar Court in order to prove the charge or charges or misconduct against the above-named attorney.

- [x] I understand that every person who reports to the State Bar or causes a complaint to be filed with the State Bar that an attorney has engaged in professional misconduct, knowing the report or complaint to be false and malicious, is guilty of a misdemeanor.

Your IP address is being recorded in order to help prevent fraud.

Signature - Your full name*

Your complaint is submitted when you click on the "Submit" button. You will have the option to print your complaint after you click "Submit". If you provide an email address, you will also receive an email confirmation that will enable you to download or print the submitted complaint.

Complaints submitted on business days after 4:30 pm PT, on weekends, or on holidays, will be deemed received on the next business day.

Submit Cancel

Protecting the public & enhancing the administration of justice.

San Francisco (Main Office)
180 Howard St.
San Francisco, CA 94105
415-538-2000

Los Angeles
845 S. Figueroa St.
Los Angeles, CA 90017
213-765-1000

Help Center
Site Feedback ↗
Contact Us
Careers
Public Records
Staff Logins
News
My State Bar Profile Login ↗
Our Mission

Copyright ©2025 The State Bar of California
User Policies

The State Bar Court of California

The State Bar of California

Search

# Attorney Profile

## Alan K Abrams #208279

**License Status: Active**

Address: Abrams & Taheri, LLP, 1875 Century Park E, Ste 2250, Los Angeles, CA 90067-2563
Phone: 310-894-8000 | Fax: 310-633-8333
Email: abrams@lawyer.com | Website: Not Available

More about This Attorney ▾

## License Status, Disciplinary and Administrative History

The table below shows an attorney's license status changes, disciplinary actions, and administrative actions. Some administrative suspensions are subject to automatic removal from the attorney profile page pursuant to the State Bar's policy on removal of administrative actions. Administrative suspensions are non-disciplinary actions resulting from noncompliance with administrative requirements, such as the requirement to pay licensing fees or comply with Minimum Continuing Legal Education. Administrative suspensions that meet the criteria in the State Bar's policy on removal of administrative actions would not be displayed below.

| Date | License Status | Discipline | Administrative Action |
|---|---|---|---|
| **Present** | Active | | |
| **9/12/2000** | Admitted to the State Bar of California | | |

**Additional Information:**

- About the disciplinary system

EOIR 26 of 27

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
300 NORTH LOS ANGELES IMMIGRATION COURT

**Matter of: Urrutia Castellon, Massiel** **Alien No.: A240-262-057**

## PROOF OF SERVICE

On August 14, 2026 I, Erika Roman, Esq., served a copy of this **RENEWED MOTION TO REOPEN AND RESCIND INABSENTIA ORDER OF REMOVAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WITH AUTO STAY** and any attached pages to U.S. Department of Homeland Security / Office of the Principal Legal Advisor, at **300 North Los Angeles Street 1240 Los Angeles, CA 90012** via https://eService.ice.gov.

Date: August 14, 2026 Signed: ______________________

Erika Roman, Esq.

# EXHIBIT 16

Email Correspondence From ERO

**From:** DVFEROResponse@ice.dhs.gov <DVFEROResponseice.dhs.gov@ice.dhs.gov>
**Sent:** Wednesday, September 2, 2026 [illegible] PM
**To:** Erika Roman <erika@elrlawgroup.com>; ADE ERO Response, <ADEEROResponse@ice.dhs.gov>; #DVFERO501-999, <#DVFERO501-999@ice.dhs.gov>; #DVFERO501-999, <#DVFERO501-999@ice.dhs.gov>; DVFEROResponse@ice.dhs.gov <DVFEROResponseice.dhs.gov@ice.dhs.gov>
**Cc:** reception@elrlawgroup <reception@elrlawgroup.com>; ADE Duty Attorney <ADEDutyAttorney@ice.dhs.gov>; Irving Jimenez <Irving@elrlawgroup.com>; Carlos Maury <carlos@carlosmaury.law>; #APCERO000-500, <#APCERO000-500@ice.dhs.gov>
**Subject:** RE: Massiel Urrutia A240.262.057- g28 attached- request for urgent information needed

Greetings,

Your G-28 is documented in our records. To answer all your questions below, our records indicate that an electronic travel document request was submitted to the Embassy of Nicaragua, no other updates at this time. The Nicaraguan consulate was notified of your client's detention, and I do not show any consular interview has been conducted, no other updates at this time. ICE has not designated a third country of removal as she has received an order of removal to Nicaragua and her asylum, withholding and CAT have been denied.

For review of any release request the supporting documents must be mailed to our facility or physically delivered to the facility using our exterior drop off box located at the entrance of the building.

**Att: Deportation Officer E.Navarro**
**10400 Rancho Rd, Adelanto, CA 92301.**

Respectfully,

**E.Navarro**
Deportation Officer | Detained Docket
ICE Enforcement and Removal Operations
Los Angeles Field Office, Adelanto ICE Processing Center
Desk: 760-561-6100

*This communication is UNCLASSIFIED//FOR OFFICIAL USE ONLY (U//FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official. No portion of this communication should be furnished to the media, either in written or verbal form.*

**From:** Erika Roman <erika@elrlawgroup.com>
**Sent:** Wednesday, September 2, 2026 8:54 AM
**To:** ADE ERO Response, <adeeroresponse@ice.dhs.gov>; #DVFERO501-999, <#dvfero501-999@ice.dhs.gov>; #DVFERO501-999, <dvfero501-999@ice.dhs.gov>; DVFEROResponse@ice.dhs.gov <dvferoresponseice.dhs.gov@ice.dhs.gov>
**Cc:** gil.montes@ice.dhs.gov; brian.peterson@ice.dhs.gov; reception@elrlawgroup <reception@elrlawgroup.com>; ADE Duty Attorney <adedutyattorney@ice.dhs.gov>; Irving Jimenez <Irving@elrlawgroup.com>; Carlos Maury <carlos@carlosmaury.law>
**Subject:** Massiel Urrutia A240.262.057- g28 attached- request for urgent information needed
**Importance:** High

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

Good morning,

I represent Massiel and we have a motion to reopen pending with a stay. We are anticipating a reopening soon. Please see attached letter from Congressman Garcia on behalf of Massiel.
If you can kindly answer my questions, I would most appreciate.

1. Were any travel documents requested and if so, on what date?
2. Was any request submitted to Nicaragua? If so, by what method?
3. Did Nicaragua respond? If so, what was the response?
4. Has any consular interview been scheduled, held or declined?
5. Has ICE designed any third party country? Any post custody order reviews? If so, please provide copies of the decisions.

Please feel free to reach out to me anytime if I can provide further information. My cell is fastest way to contact me at 310-850-0319.
Your anticipated response is appreciated.

Thank you, Erika Roman-Maury, Attorney

ELR LAW GROUP
14654 Victory Blvd, Suite 110
Van Nuys, CA 91411

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2026, I electronically filed the foregoing **PETITION FOR WRIT OF HABEAS CORPUS, PURSUANT TO 28 U.S.C. §2241; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§702-706** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties shall be served in accordance with the Federal Rules of Civil Procedure.

Dated: September 2, 2026

Respectfully Submitted,
*S/ Erika Roman-Maury*

Attorney for *Massiel Urrutia-Castellon*
Email: Erika@ELRLawgroup.com